THE CORPORATION OF KNOXVILLE *v.* JOHN W. BIRD.

1. CORPORATIONS, MUNICIPAL. *Ordinance defining fire limits.* A city authorized by its charter, may establish fire districts, and may forbid the erection of wooden buildings within such limits.

2. SAME. *Constitutional law.* It is not the impairment of the obligation of a contract, in the constitutional sense, for a city to pass an ordinance forbidding the erection of wooden buildings within fire districts, although the contract was made to do so, before the passage of such ordinance.

FROM KNOX.

Appeal in error from the Circuit Court of Knox county. D. K. YOUNG, J., presiding by interchange.

L. A. GRATZ for Knoxville.

J. C. J. WILLIAMS for Bird.

FREEMAN, J., delivered the opinion of the court.

This suit was brought by warrant issued by the recorder of the city of Knoxville to recover a penalty for a violation of an ordinance of the city. The court below gave judgment in favor of defendant, from which a writ of error is prosecuted to this court.

The case is this: On the 11th of February, 1882, the owner of a lot on Asylum street, in the city, leased to parties defendants the lot in question for three years, with an agreement that a livery stable was to be erected thereon, the dimensions and character of which was stipulated for in the contract. The lessees, in pursuance of this agreement, had contracted for the building to be erected, had procured the lumber to be placed on the ground, and begun to fashion it for the erection of the building—having prepared the brick pillars on which it was to stand. The building itself was to be of wood.

Vestal and others deemed the erection prejudicial to them and a nuisance, whereupon they filed a bill in the chancery court enjoining the erection. Soon after this, as the record says, "through the agency of said Vestal," the mayor and aldermen passed an ordinance extending what is known as the fire limit of the city, so as to include this and other property—the effect of this being to forbid the erection of wooden buildings, or buildings of inflammable material within the prescribed limit; after this Vestal dismissed his suit.

Defendant persisting in proceeding with his building, this suit was brought for violation of the ordinance.

The question presented on this state of facts is, was the ordinance in question void under the facts stated, or in violation of the defendant's rights?

That a city, especially when authorized by its charter, has the right to establish such fire districts, as is done in this case, and may prohibit the erection of wooden buildings, as a safeguard against the occurrence and spread of conflagration is not denied, and is well settled by authority: See Dillon Municipal Corp., vol. 1, 405, with authorities cited. It is also shown by the charter of the city, that express authority is conferred on the city in its charter to establish such regulations as may be deemed proper to this end.

This conceded, the question is whether there is anything in the facts of this case to exclude or forbid the exercise of the power granted by the city.

The argument is earnestly pressed upon us, that the ordinance is void as impairing the obligation of the contract with the owner to build, or with the workman who had contracted to erect the building.

We take it, there is nothing in this objection. The principle applicable to this aspect of the case is thus stated by Mr. Parsons: "If one agrees to do a thing which is lawful for him to do, and it becomes unlawful by an act of the Legislature, the act avoids the promise, and so if one agrees not to do that which he may lawfully abstain from doing, but a subsequent act requires him to do it, this act also avoids the promise": Parsons on Cont., vol. 2, page 674.

As a matter of course, the power of the Legislature must be exercised in subservience to the Constitution, and in accord with it. It is prohibited to pass any law impairing the obligation, or element of legal compulsion in contracts, and this prohibition is imperative in all the field of pure contract obligations, which when complete and lawful at the time, are beyond the reach of legislative action.

But the principle on which the doctrine of non-impairment of contracts stands is, that the law for its enforcement and execution existing at the time makes a part of the contract, so enters into it as to become a part of it, and therefore stands protected by the constitutional inhibition.

By this principle the contract in this case must be held to have been entered into in view of the right on the part of the city to exercise its police powers for the benefit of all its citizens, and so this legal and constitutional right in its proper exercise, entered into the contract of the parties, or rather, it was made in subservience to the exercise of the granted favor found in the charter, as the law of its creation. The property was in the city, the contract to be executed in the city, and as a matter of course subject to the exercise of all the rightful powers of the city government, charged with the protection and guardianship of the property of the people within its limits.

This being so, the only question is, was the ordinance in question an exercise of the lawful powers of the mayor and aldermen, or was it for any cause void and inoperative? Its incidental effect in preventing

Corporation of Knoxville *v.* Bird.

the completion of the contract of building cannot be considered.

It is true the exercise of this power by the city authorities tends in a considerable degree to impinge upon and restrain the free use of the property of parties living within the prescribed limits, the highest idea of property being that over which a man has complete dominion, with which he may do as he pleases. But it is an essential element of every organized society that even this right is to be enjoyed in subordination to the general public interest of the whole body. For the benefits conferred by the protection given by law and general advantages received from organized society this entire freedom is subject to be abridged and regulated within certain bounds, only limited by the requirement that private property shall not be taken or appropriated for public use without compensation being first made for the property thus used. The defendant in this case has only been required to submit his rights to the rule that a man must enjoy them subject to such regulation as the interest of the society of which he is a member may demand.

It is said the ordinance was obtained by the agency of parties interested. This may be so. But there is nothing from which we can see that there was any improper or corrupt influence used on the legislative body of the city. It is only stated that through the agency of Vestal, who had filed his bill to enjoin the erection, the mayor and aldermen passed the ordinance extending the fire limits of the city. This is

entirely consistent with a proper agency properly exercised—it may have been by representing to the board the need for such extension, and showing the facts on which this need rested—at any rate, in favor of the purity of action within their prescribed powers of the legislative body of a city, we can make no inference of any thing wrongful to the extent that will invalidate an ordinance passed by them from the simple statement that it was procured to be passed "through the agency of a party," who may appear to have been incidentally benefited. There is nothing in this objection.

It is argued the ordinance is oppressive and unjust. It has been stated by this court, *Beasley* v. *Town of Columbia*, 1 Hum. 240, that an ordinance of a town may be held void for oppression or irregularity. The writer of this opinion has never been able to assent to this statement, so far as to hold an ordinance within the acknowledged powers of a corporate body void because deemed by a court oppressive, though it seems to be sustained by the current of authority. I have always thought the only test of general legislative action should be, was the law passed in pursuance of and in accord with the Constitution, and in the exercise of the constitutional powers of the legislative body? In the case of a municipal corporation, the question is, whether it was in accord with our Constitutions, State and Federal, and then within the powers granted in the charter of the corporation, or necessary as an implied power, to the exercise of the powers expressly granted. If so, the propriety and mode of

its exercise is one solely for the legislative body exercising it. That is, in my judgment, a legislative, not a judicial, question, when the power to do the thing is conceded. But conceding the rule, we can see no element of oppression or inequality in the ordinance affecting its validity. A party who had contracted to build a wooden house is prohibited from doing so by the provisions of a general law affecting all others as well as himself, as we must assume for the public advantage. That he had got his lumber ready to do so, and even did some little work towards it, does not change the result. It may work some injury in loss of time and expense in getting his lumber delivered, but he is perfectly free to erect a house of safe materials, and he has the lumber as his property, which may be assumed to be worth as much in the market as he gave for it.

Be this as it may, a slight incidental damage done to one individual, or even more, could never be held an oppression or wrong such as would invalidate an ordinance of a city. It must certainly be one working a general and public, or a permanent and continued wrong to a private individual or a class—certainly there is no element of oppression in this case reaching to the validity of the ordinance.

It may be that others included in this new fire district will be as much incommoded in their anticipated building plans as the defendant in this case. The legislative body of the city to whom is confided the power exercised, have judged it proper to create the new fire district. Whether they judged wisely or

the opposite is not a judicial question, but a legislative one, outside the sphere of the judiciary. What territory, whether much or little, should be included in the extended boundary is a matter over which no court had jurisdiction to decide. It is within the sphere of legislative action, and not a judicial question, or having any element of such a question in it. For the propriety and consequences of their action the legislative body is responsible alone to their constituency whose agents and representatives they are for the time being. But on the question of injustice or inequality of an ordinance, we could only look to its results, not to the motives of the legislative body nor the propriety of the mode of exercising the power.

We think the principles announced are sound, well supported by authority as well as sound reason, and the necessities of our municipal organizations. The powers conceded might be injuriously exercised or abused. But all power is liable to abuse. In this case we have the wholesome check upon it that it is exercised by agents elected by the people themselves, and their ordinances are operative upon the very people whose agents enact them, and the agents themselves are subject to them. In view of our popular form of government powers of this kind are not likely to be oppressively exercised to any great extent, or if so, the remedy is in the hands of the parties upon whom they operate, who can as readily unmake as make the laws. We hold the ordinance in question valid, and reverse the holding of the court below, and direct judgment for the plaintiff.