Wm. F. Ballentine et al., v. The Mayor and Aldermen. of Pulaski, et al.

1. Constitutional Law. *Corporatoins.* The provision of the Constitution, Art. xi., sec. 8, that "no corporation shall be created, or its powers increased or diminished, by special law," again held to apply only to private, and not to municipal corporations.

2. Same. *Repeals.* The general law of 1872, ch. 12 (new Code, secs. 1652, 1657), which authorizes any municipal corporation to establish a system of public schools upon consent of two-thirds of the qualified voters, is not repealed by the special act of 1885, ch. 37, amending the charter of the town of Pulaski by providing for the establishment of a system of free schools by the corporate authorities, without a popular vote.

3. Same. *Repeal by implication.* A repeal of a general law by implication is not within the purview of the Constitution, Art. 2, sec. 17.

4. Schools. *Taxes. Municipal corporations.* To establish and provide by local taxation for a system of free schools for a municipality or county, is a county and corporation purpose, within the meaning of the Constitution, Art. 2, sec. 29, which gives the Legislature power to authorize counties and incorporated towns to impose taxes for county and corporation purposes.

5. Municipal Corporations. *Poll tax.* The Constitution, Art. 2, sec. 29, after providing that the State poll tax shall not exceed one dollar, adds: "Nor shall any county or corporation levy a poll tax exceeding the amount levied by the State." *Held,* that a municipal

corporation can levy only one such tax, although an amendment to the charter may authorize an additional poll tax for school purposes.

6. SAME. *Schools. Board of education.* The fourth section of the act of 1885, authorizes the board of education of the town to " permit children living outside of the corporate limits" to attend said schools, upon paying tuition fees, to be fixed by the board. *Held,* permissive, and for the benefit of the school system, by bringing in paying pupils, the effect of which need not be considered until the power is exercised.

7. SUPREME COURT PRACTICE. This court has nothing to do with the policy of legislation, if satisfied as to its constitutionality.

FROM GILES.

Appeal from the Chancery Court at Pulaski.   W: S. FLEMING, Ch.

N. R. WILKES, N. SMITHSON and H. WARD for complainants.

JOHN T. ALLEN, T. M. JONES, S. E. ROSE and A. J. ABERNATHY for defendants.

COOPER, J., delivered the opinion of the court.

The chancellor dismissed this bill on demurrer and the complainants appealed.   The bill was filed for the purpose of enjoining the collection of taxes under an ordinance of the corporate authorities of the town of Pulaski establishing, by virtue of a recent act of the Legislature, a system of free schools for the children of the town.   The complainants are partly citizens of the town paying taxes, and partly owners of property in the corporation subject to the proposed taxation.

The municipal corporation of the town of Pulaski was created by special act of the Legislature in the year 1817, the charter being largely amended in 1850, and to a less extent in 1860. In 1877, and again in 1879, and once more in 1885, the Legislature by special acts amended the charter. It is the last act of 1885, ch. 37, which has given occasion to this suit. That act undertakes to amend the charter of incorporation by giving the board of. mayor and aldermen of the town power "to provide for and establish a system of free schools for all classes of children in said town, between the ages of six and twenty-one years, and to regulate the same." The board is further authorized: "To levy and collect a tax for public school purposes upon all property within the town taxable under the laws of the State, and also upon all taxable polls and privileges, said tax not to exceed seventy-five cents on the hundred dollars' worth of property." The act also provides for the appointment, by the city authorities, of a board of education to see to the collection and disbursement of the school taxes, and have the charge and control of the schools. The board of mayor and aldermen of the town proceeded, by ordinance, to levy a tax on property, polls and privileges for school purposes, and to elect a board of education as required, which latter board duly organized, and entered upon the discharge of their duties. The present bill was then filed.

The first point to be noticed, for it involves the merits of the legislation, is the constitutionality of the act of 1885, amending the charter of the town of

Pulaski. The contention of the complainants is that the act violates article xi., section 8 of the Constitution, in that it undertakes to increase the powers of a municipal corporation by a special law, whereas, it is argued, such increase of powers can, under the section cited, only be effected by a general law. The question has been ably and elaborately argued, upon the supposition made by counsel, that the question has not heretofore been authoritatively settled. And it must be admitted that the question has been one of grave doubt, both to the Legislature and the courts. It is said by one of the learned counsel of the complainants that the Legislature has recognized the true construction to be as contended for on behalf of the complainants by passing numerous general laws for the organization and amendment of the charters of municipal corporations. But the Legislature passed such general laws previous to the adoption of the Constitution of 1870, in which Constitution the section in question appears for the first time. And we know, as a matter of legislative history, that at every session of the Legislature since 1870, special acts have been passed amending the charters of municipal corporations, the record before us showing two such special amendments of the charter of Pulaski, one in 1877 and the other in 1879, besides the one now under consideration. The acts of 1885 contain also two other special amendments of the same charter, not referred to in the record. With a knowledge of these facts, this court approached the question with a due sense of its importance, and only undertook to determine it after

the fullest argument, and the most mature consideration. The question was elaborately argued in the case of *Lueherman* v. *Taxing District*, 2 Lea, 425. For, as will be seen from the dissenting opinion of Judge Turney in that case, there was some doubt whether the act under consideration, although in the form of a general law, was not in reality a special act confined exclusively to the territory of the late city of Memphis, and the inhabitants thereof. The point was learnedly and exhaustively argued by some of the ablest lawyers in the State. I was myself then prepared to hold, without shutting my eyes in the least to the strength of the opposing argument, as my opinion shows, that the section of the Constitution then and now under consideration, was limited to private corporations. But a majority of the court were satisfied the law was general, and preferred to put the decision upon that ground. The question again came up in *The State* v. *Wilson*, 12 Lea, 246, and was once more fully and elaborately argued by a number of lawyers from a bar always conspicuous for able men. In writing the opinion of this court, I was inclined once more to postpone a decision of the question by suggesting that the section of the Constitution under consideration, even if it applied to municipal corporations, would not necessarily deprive the General Assembly of all power of special legislation in regard to such corporations. But I was compelled to admit that the distinction suggested would leave a door open for legislation necessarily leading to litigation. My brother judges preferred, and I concurred with them

in the conclusion, to put the decision on the broader ground that the constitutional prohibition applied exclusively to private corporations. The point was very fully considered by the members of the court, as the opinions of both the majority and minority of the judges show, and was expressly decided. While we concede the ability of the arguments now submitted in opposition to the view of the majority of the court, we find no sufficient reason for changing our opinion, deliberately reached, after hearing arguments equally able and elaborate, *pro* and *con,* and distinctly announced as our final conclusion.

The Legislature, by the act of 1872, ch. 12, (new Code, secs. 1652, 1657), authorized all municipal corporations to establish a system of public schools and levy a tax in support thereof, upon the consent of two-thirds of the qualified voters of the municipality given at an election held for the purpose. It is now insisted that the amendatory act of 1885 repeals the act of 1872 by "necessary implication," and is, therefore, void, because it violates the Constitution, Art. 2, sec. 17, by failing to refer to the act repealed. But if the fact were as claimed, we have settled that the section of the Constitution referred to has no application to statutes which repeal by implication: *Home Insurance Company* v. *Taxing District,* 4 Lea, 644; *State* v. *Gaines,* 4 Lea, 353; *Maney* v. *State,* 6 Lea, 218, 221; *Knoxville* v. *Lewis,* 12 Lea, 181. The act of 1872 is not, however, repealed by the act of 1885. It is still in full force, and if the corporate authorities of Pulaski had not determined to proceed under

the act of 1885, or were hereafter to cease to act under it, they might still have the benefit of the act of 1872.

It is suggested in the bill and in argument that so long as the act of 1872 is allowed to remain in force, the power of the Legislature on the subject was exhausted. But if this means anything more than what is contended for in the preceding argument, that there must be a constitutional repeal, we are unable to see its force. The power of the General Assembly of the State over all matters of legislation is never exhausted. The only question in any particular case is, has it been constitutionally exercised?

The Constitution, Art. 2, sec. 29, provides: "The General Assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law." The courts of this State have always held, that taxation is a purely legislative power, which can not be delegated except as authorized by the Constitution. *Marr* v. *Enloe*, 1 Yer., 454; *Keesee* v. *District Board*, 6 Cold., 127; *Waterhouse* v. *Board, etc.*, 8 Heis., 857; *Lipscomb* v. *Dean*, 1 Lea, 546. It is conceded, therefore, that the Legislature can only authorize counties and incorporated towns in this State to impose taxes "for county and corporation purposes." And the point is made by the complainants that to establish and provide for a system of free public schools, is not a corporation purpose. It is a little curious that such a point should be made at this time, when a system of free public schools has

been in operation, supported by municipal taxation, in several of the principal cities of this State for over a quarter of a century, and when, for at least twenty years, many of the counties of this State have been, under a general law, aiding the public schools by local taxation. . The argument submitted in support of the position may be characterized as elaborate and earnest, but without much reference to the judicial decisions, except those of our own State. And yet, if any one thing can be considered as settled by the common consent of the people, the Legislature and the courts, it would seem to be the fact that secular education is a State purpose, and as such, subject to the control of the Legislature, of the counties and incorporated towns of the State as branches or arms of the State government. The authorities, our own among the number, are all one way.

"It may be safely declared," says Judge Cooley, "that to bring a sound education within the reach of all the inhabitants has been a prime object of American government from the very first. It was declared by colonial legislation, and has been reiterated in constitutional provisions to the present day. It has been regarded as the imperative duty of the government; and when question has been made concerning it, the question has related, not to the existence of the duty, but to its extent. But the question of extent is one of public policy, and addresses itself to the Legislature and the people, not to the courts. And the tendency on the part of the people has been steadily in the direction of taking upon themselves

larger burdens in order to provide more spacious, ele-
gant and convenient houses of instruction, and to place
within the reach of all a *more generous* and useful
education. And this is usually done by the direct
action of the public; the State or its municipalities
constructing and owning the 'edifices, and supporting
the schools, academies, colleges and universities:"
Cooley on Tax., 84. A few of the actual decisions
of the courts of other States, treating education as a
State and municipal purpose, may be cited: *Cushing*
v. *Inhabitants of Newburyport*, 10 Met., 508; *Merrick*
v. *Amherst*, 12 Allen, 500; *Stewart* v. *Kalamazoo*, 30
Mich., 69; *Horton* v. *School Commissioners*, 43 Alabama,
598; *Gordon* v. *Carnes*, 47 N. Y., 608; *Commissioners
of Schools* v. *Alleghany County*, 20 Md., 439; *Bull* v.
*Read*, 13 Grat., 78; *Kuhn* v. *Board of Education*, 4
West Virginia, 499; *State* v. *Sickles*, 24 New Jersey,
135; *Marks* v. *University*, 37 Indiana, 155; *Vanover* v.
*Justices*, 27 Georgia, 354.

The Constitution of this State, adopted in 1834, as
well as the Constitution of 1870, contained the follow-
ing provision, being section 12, Art. xi., of both Con-
stitutions: "Knowledge, learning and virtue being essen-
tial to the preservation of republican institutions, and
the diffusion of the opportunities and advantages of
education throughout the different portions of the State,
being highly conducive to the promotion of this end,
it shall be the duty of the General Assembly, in all
future periods of this government, to cherish literature
and science. And the fund called the common school
fund, and all the lands and proceeds thereof, dividends,

41—VOL. 15.

stocks and other property of every description what-
ever, heretofore by law appropriated by the General
Assembly of this State for the use of common schools,
and all such as shall be hereafter appropriated, shall
remain a perpetual fund, the principal of which shall
never be diminished by legislative appropriation; and
the interest thereof shall be inviolably appropriated to
the support and encouragement of common schools
throughout the State, and for the equal benefit of all
the people thereof; and no law shall be made au-
thorizing said fund or any part thereof to be diverted
to any other use." The same section of the Consti-
tution of 1870 contains the further provision that the
State taxes derived from polls shall be appropriated
to educational purposes, and directs that no school
established or aided under it should allow white and
negro children to be received as scholars therein to-
gether.

The language of this section, both in the earlier
and later Constitution, plainly shows the intent of the
people that the education of the children through a
system of common schools should be a State purpose.
And the existence of a common school fund at the
time of the adoption of the Constitution of 1834, also
clearly shows that the Legislature, without any positive
constitutional direction, had always considered education,
to use the language of Judge Cooley, "a prime object
of American government." As soon as the growth
of our cities, and the increasing prosperity of the
State would justify it, the Legislature began to confer
upon the counties and incorporated towns the power

to establish and sustain, or aid in sustaining, public schools. If the State alone managed the common schools, the richer and more populous counties would bear the larger part of the burden on the entire State, which might be right enough to a certain extent, all parts of the State being interested in the education of the people. But it was obvious that the richer and more populous counties needed greater facilities of education than those afforded by the State, and ought to have the exclusive benefit of the increased taxation upon them rendered necessary for the purpose. No better mode could possibly be devised for attaining these ends than the entrusting to the counties and the incorporated towns, as parts and agents of the State government, the power to organize, support and control the system of public schools within their limits, or to aid the same by taxation. The powers of municipal corporations are usually only parts or parcels of the powers of the State government, entrusted to them for the better security and advantage of the people. The preservation of the public peace is one of the principal duties of the State, yet a part of the duty may, and always has been, entrusted to the local municipalities. The same is true of the creation and keeping up of public roads, and of the preservation of the public health. It seemed to the Legislature, to follow of course, that its power over public schools might, to a certain extent, be entrusted to its counties and incorporated towns. This was done, as we have seen, probably a third of a century ago, in some of our

more populous incorporated cities. And that the establishment and support of a system of free schools in such cities was a legitimate corporation purpose, was conceded by the counsel, and taken for granted by the whole court, in the case of *East Tennessee University* v. *Knoxville,* 6 Baxt., 166. And it was expressly decided by the majority of the court to be a county purpose, notwithstanding a doubt expressed by Judge McFarland, in the case of *Waterhouse* v. *Public Schools,* 8 Heis., 857; S. C., 9 Bax., 398. The opinion of the majority of the court was followed in *Railroad Company* v. *Franklin County,* 5 Lea, 707, and *Railroad Company* v. *Marion County,* 7 Lea, 661.

The doubt of Judge McFarland, above referred to, was whether a county or corporation purpose would not, within the meaning of the Constitution as to delegated taxation, indicate a purpose peculiar to the county or incorporated town, not a purpose common to State, county and town. But, as we have seen, the powers conferred upon its arms or agents are usually powers which appertain to the State. And we have a striking instance in the new Code, section 2371, *et seq.,* of the same purpose, being a purpose of State, county and town, to be performed by each at its own expense. The State has a general board of · health to prevent the spread of disease; every municipal corporation of a certain population, shall also have a board of health; and each county is required, at its own expense, to take measures to prevent the spread of disease. The purpose may, therefore, be a State, county and municipal purpose,

but what may be done, and the expense incurred in effectuating that purpose, as well as the benefit obtained, should be confined to the territory and population of the locality. Nor is there anything in the suggestion that the purpose should be one belonging to the county or town from time immemorial, in this State and North Carolina. If usage were the test, we would have to go back to the most liberally endowed municipalities of the mother country. But it is a question for the Legislature to determine what portion of governmental powers shall be conferred upon its municipalities, and these powers must necessarily vary from time to time.

Something is said, both in the bill and in the argument in support thereof, about the act of 1885 violating the Constitution, Article I, section 8, which provides, among other things, that no man shall be deprived of his property but by the law of the land; and section 21 of the same article, that no man's property shall be taken or applied to public use, "without the consent of his representatives," or just compensation. But if the establishment and support of a system of public schools is a corporation purpose, and the act of 1885 was constitutionally enacted by the Legislature, and the ordinance based thereon was properly passed by the municipal authorities, then the property of the complainants taken in the way of taxes to support the system would be taken by the law of the land, and with the consent of their representatives, first in the Legislature and again in the city council.

It is suggested that the funds to be devoted to educational purposes, beyond those previously appropriated, are limited by the Constitution, Article XI, section 12, already quoted, to the State taxes derived from polls. But the section of the Constitution referred to, expressly contemplates future legislative appropriations by specially mentioning, as prospective additions to the school fund, "all such (funds and other property of every description whatever) as shall hereafter be appropriated." And there is not the slightest intimation in the whole section of any design to limit the legislative power in relation to common schools.

The act of 1885 authorizes the levy by the corporation authorities for school purposes to be made upon "all taxable polls," as well as property and privileges, and the ordinance of the corporation levies the tax accordingly. The bill alleges as a fact, which the demurrer admits, that the corporate authorities had also imposed a tax of one dollar on each poll for ordinary corporation purposes. Some of the complainants, as we have seen, are liable to the payment of these poll taxes. And they insist that the additional poll tax for school purposes is violative of the Constitution, Article II, section 28. That section, after providing for a State poll tax "of not less than fifty cents nor more than one dollar per annum," adds: "Nor shall any county or corporation levy a poll tax exceeding the amount levied by the State." The argument of the complainants is that municipal corporations are limited to taxation on polls not exceeding in any one year the State tax for that year. The

argument on the other side is, that the Constitution
provides that the money derived by the State from
taxable polls, shall be devoted to educational purposes.
This provision, in connection with the provision lim-
iting the amount of the State poll tax, necessarily
limits the State poll tax to a single tax each year,
not exceeding one dollar. But, it is said, the poll
tax of counties and incorporated towns are not devoted
to any specific purpose, and, although limited in any
instance to the State tax, may be levied as often as
the Legislature chooses to confer the power of taxing
for special purposes. And it must be admitted that
the Legislature, since the incorporation into the Con-
stitution of 1870 of the limitation on the poll tax,
have authorized counties, and perhaps towns, in addi-
tion to the usual taxes on property, privileges and
polls for ordinary county and corporation purposes, to
make a levy of taxes on property, privileges and polls
for particular purposes. We have an instance in the
Franklin county case cited above. It is probably a
continuance of an old usage without properly consid-
ering the constitutional restriction. We are constrained
to hold that the Constitution in this respect is man-
datory, and that no county or corporation can levy a
poll tax for any year exceeding the State tax for
that year. And that if the defendant corporation had
already levied for the year in controversy a poll tax
of one dollar for the usual corporation purposes, its
second levy of a similar tax for school purposes was
unconstitutional and void. The complainants would, in
that view, be entitled to perpetually enjoin the col-

lection of the latter tax.  But we are equally clear that the provision of the act is severable, and will not affect the residue of the act, nor the ordinance based thereon.  The tax on taxable polls would constitute a very small part of the entire levy authorized for school purposes.  And we have repeatedly held that a statute void in part, because beyond the competency of the Legislature as to that part, will be valid in other respects which are severable: *Tillman* v. *Cooke*, 9 Baxt., 429; *State* v. *Wilson*, 12 Lea, 246.

The learned and able counsel of complainants make another point on the act of 1885, and insist that section 4 thereof is unconstitutional, and thereby vitiates, as they contend, the whole act.  The section mentioned is in these . words: " The board of education may permit children living outside of the corporate limits of said town to attend said schools provided for in this bill, by requiring such children, their parents or guardians, to pay tuition to said board of education, the rates and terms of tuition to be fixed by said board, and the money so realized shall go into the school fund of the town; and when any such person living outside of said corporation shall attend, or send to said school, and shall own property in the corporation limits of said town, and shall pay a school tax on the same to said corporation, the board of education may allow credit on the tuition account of such person to the extent of the school tax paid by such person to the corporation the same year that such person shall attend, or send his child, children or ward to said school; but no

credit shall be allowed to such person on any tuition account for school taxes paid the corporation any other year than that in which such person shall send his child, children or wards to said school, and no credit or benefit shall be allowed any such person for taxes paid in excess of such person's tuition account to said board of education." The argument is, that this section of the act makes the citizens of the corporation establish a system of common schools for children living outside of the corporate limits, which would not be a corporate purpose. But the section in question only permits the board of education to do what they may never in fact do, and is moreover clearly severable from the rest of the act, and might be held void without in the least affecting the substance of the act. The object of the section, moreover, is plainly to benefit the school system by bringing in paying scholars where, in the judgment of the board, it may be done without prejudice to the children of the town. And whether a non-resident tax payer might not be allowed by the Legislature the benefit of the schools to the extent of the taxes paid, just as a non-resident property owner is often permitted to vote in the corporation, might admit of discussion. There is nothing in the objection.

Very earnest and able arguments have been submitted by the learned counsel of the complainants upon the policy of the State, county and incorporated towns being all allowed to tax the citizen for school purposes, thus subjecting him to be thrice taxed for the benefit of education. It has been earnestly insisted

that the system authorized in this case is not for the best interest of the inhabitants of the town corporation, and works oppressively. But, of course, the courts have nothing to do with the policy of the laws, and cannot interfere merely because in some instances they may work. harshly. These are arguments to be submitted to the law-making power, or to the people, to influence them in selecting their representatives, both in the State Legislature and the corporation council. Our duty is limited to pronouncing on the constitutionality of the act. We are expressly forbidden by the Constitution itself to exercise any of the powers properly belonging to the legislative department: Const., Art. II, sec. 2.

Under the rule of decision adopted by this court when a case comes up on demurrer, and repeatedly acted upon (1 Lea, 468; 4 Lea, 249; 6 Lea, 65; 13 Lea, 599), the chancellor's decree will be affirmed, and the bill dismissed as to all the matters of demurrer except the cause of demurrer based upon the alleged fact that the limited poll tax had already been levied for the year before the levy of the school tax. The demurrer will be overruled on that point, and the cause remanded for further proceedings in that regard, unless the parties can agree upon final decree.

The defendants will pay the costs of this court, the costs of the court below to be paid as directed by the chancellor.

TURNEY J., concurs in the conclusions, but does not endorse the reasoning to the broad extent to which it seems to go.