AUGUST MEUL

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

, *Opinion filed October 25, 1902.*

1. FISH AND GAME—*title to the Fish and Game act of 1899 construed.*
It is to be presumed that the legislature, in framing the title of
the act of 1899 for the protection of "game, wild fowl and birds,"
used the word "game" in its proper sense, as including all game
birds, game fowl and game animals, and hence the addition of the
words "wild fowl and birds" was for the purpose of protecting wild
fowl and birds not game, and, the intention being clear, the doc-
trine of *ejusdem generis* does not apply to the words of the title.

2. SAME—*Fish and Game law of 1899 does not embrace two subjects.*
The fact that the Fish and Game act of 1899 includes within its
meaning both game fowl and birds as well as fowl and birds other
than game ones does not make the act unconstitutional, as em-
bracing more than one subject.

3. CONSTITUTIONAL LAW—*Game law of 1899 is not in conflict with
section 13 of article 5 of the constitution.* The power conferred by sec-
tion 13 of article 5 of the constitution upon the Governor to grant
pardons, etc., does not include the power to remit the interest of
others in fines and penalties which have become fixed, and hence
the provisions of sections 8 and 10 of the Game law of 1899, giving
one-half of the fines collected to the informer, may be enforced
without conflicting with the pardoning power thus conferred. .

4. SAME—*Game law of 1899 does not deny equal protection of the law.*
The fact that under sections 20, 21 and 22 of the Game law of 1899
a purchaser of seized game is entitled to a certificate of purchase
from the constable, investing him with the legal title to the game
so purchased, does not make the act obnoxious to the fourteenth
amendment, concerning equal protection of the law, since the
title to such game is in the State under section 11 of the act of
1899, and when seized and sold under the provisions of the law the
purchaser takes title from the State.

WRIT OF ERROR to the Criminal Court of Cook county;
the Hon. A. N. WATERMAN, Judge, presiding.

O'DONNELL & COGHLAN, (WILLIAM J. NAUGHTON, of
counsel,) for plaintiff in error. .

H. J. HAMLIN, Attorney General, CHARLES S. DENEEN,
State's Attorney, and F. L. BARNETT, for the People.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The plaintiff in error was indicted, tried and convicted in the criminal court of Cook county of the charge of unlawfully having in his possession five living wild birds not game birds, namely, five wild goldfinches or canaries, in violation of the provisions of section 3 of the act adopted by the General Assembly April 24, 1899, entitled "An act to provide additional remedies for the protection of game, wild fowl and birds, and to amend, revise and consolidate the amended Game law, approved June 1, 1889, and in force July 1, 1889, and the Game Warden act, approved June 27, 1885, in force July 1, 1885, and the act to prohibit persons from hunting within the enclosures of others without leave, as amended by act approved June 17, 1891, in force July 1, 1891." From the judgment of said criminal court inflicting a fine of $20 upon him, the plaintiff in error has prosecuted this appeal.

It is contended the enactment under which the proceeding against the plaintiff in error was instituted and maintained is in violation of the provisions of the constitution of the United States and of the constitution of the State of Illinois, and therefore invalid. It is urged, first, that under the proper construction of the title of the act but one subject of legislation as to birds is expressed in the title, namely, game birds. The argument is, the objects and things to which the act is to refer, as expressed in the title, is game, and that the enumeration in the title of "wild fowl and birds," by the application of the maxim *ejusdem generis,* must be held to be so limited as to include only such fowl and birds as are properly classed as game fowl or game birds. The word "game" means birds and beasts of a wild nature obtained by fowling and hunting. (Bouvier's Law Dict. title "Game.") Quail and other wild fowl or birds fit for food are included within the meaning of the word "game." (*People* v. *O'Neill,* 71 Mich. 325.) It is to be presumed the

General Assembly, in framing the title to the act, employed the word "game" in its proper sense, and therefore as including all game birds, game fowl and all game animals. That being true, it is clear the words "wild fowl and birds" were added for the reason the word "game" did not include certain species of wild fowl and birds designed to be protected by the act. The intent which controlled in the addition of these words was, that the title should disclose that birds and fowl which were not game birds or game fowl were objects of the enactment. This intent being unmistakable, the general and specific words employed in the title of the act do not take color from each other, for the reason the purpose to be attained by the application of the maxim *ejusdem generis* is to enable the court to ascertain and effectuate the legislative intent, and not for the purpose of defeating it. (*Foster* v. *Blount*, 18 Ala. 687; *Carlo* v. *Tufts*, 4 Cush. 448; *Willy* v. *Mahon*, 48 Minn. 140; *State* v. *Williams*, 2 Strobh. 474; *Grissell* v. *Housatonic Railway Co.* 54 Conn. 447; *Commonwealth* v. *Percival*, 4 Leigh, 150.) The principle is illustrated in the decisions of the cases of *Albert* v. *Order of Chosen Friends*, 34 Fed. Rep. 721, and *Hilton's Appeal*, 116 Pa. St. 351.

It is argued that if the maxim *ejusdem generis* is not applied in the construction of the title of the act, and the words "wild fowl and birds" are held to mean fowl and birds other than game fowl and game birds, then the enactment embraces two distinct subjects, namely, game birds and game fowl and birds and fowl other than game birds and fowl. This argument, counsel for the plaintiff in error contend, leads to the conclusion the act is void, for the reason that if it embraces two subjects it is in contravention of section 13 of article 4 of the constitution of 1870, which declares no act shall embrace more than one subject. We think the statute in question has but one general object. The end designed to be attained by the act is the preservation of beasts, birds and fowl

*feræ naturæ.* The provisions of the act relate to beasts that are taken for food, for their fur or for the mere gratification of the sportsman, and to birds and fowl that are sought for food, for their plumage or their powers of song. But all such provisions legitimately tend to effectuate the one general purpose of the enactment. All the provisions of the statute, so far as our attention has been called to them, were designed to promote one general purpose, which is to protect animals *feræ naturæ.*

Sections 8 and 10 of the act provide, in substance, that one-half of the fines imposed and collected under the act shall be paid to the informer. Section 13 of article 5 of the constitution of 1870 vests in the Governor of the State power "to grant reprieves, commutations and pardons, after conviction, for all offenses," etc. It is insisted by counsel for the plaintiff in error that after the conviction of one who has violated the provisions of the act in question, the right of an informer to that portion of the fine given him by said sections 8 and 10 becomes vested and fixed, and cannot be remitted or discharged by a pardon granted by the Governor. The act is therefore said to be unconstitutional, for the reason if given operation it would deprive the Governor of the power granted the executive by the constitution to pardon all offenders and remit all fines assessed against them. In this counsel are in error. The power committed to the Governor by the organic law to grant reprieves, commutations and pardons after conviction does not confer or include power to remit the interest of others in the fines and penalties which have become fixed and vested. *Holliday* v. *People,* 5 Gilm. 214; 17 Am. & Eng. Ency. of Law, 325, 326, 327; 1 Bishop on Crim. Law, sec. 910.

It is next urged the act denies to persons within the jurisdiction of the State the equal protection of the law, and is therefore in contravention of the provisions of section 1 of the fourteenth amendment to the constitution of the United States, and for that reason should be

adjudged to be void. This insistence of counsel grows out of the provisions of sections 20, 21 and 22 of the act. Section 20 authorizes any justice of the peace to issue a search warrant upon complaint that any person or corporation has in his, her or its possession any game, wild fowl or birds in violation of sections 1, 2 or 3 of the act. Section 21 provides for the hearing of the complaint, and in case of the conviction of the offender authorizes the entry of a judgment ordering that sale, at public auction, be made of any game, birds or fowl so found to be unlawfully in the possession of such offender. Section 22 prescribes the notice to be given of the time and place of the sale and the manner of conducting the sale, and provides that such game, birds or fowl shall be struck off and sold to the highest bidder for cash, and that the constable shall give to the purchaser "a certificate of purchase," in which shall be stated the fact of the sale and the description of the game, birds or fowl sold. Counsel for plaintiff in error contend this sale and the certificate of purchase must be construed to invest the purchaser with legal title to the game, birds or fowl so purchased, and with lawful right to keep in his possession, hold, use and enjoy the same. The argument is, the holder or purchaser is thereby granted a privilege to do that which is denied to others, and for the doing whereof the plaintiff in error was indicted, tried and convicted. Therefore, it is urged the act denies to the citizen the equal protection of the law, in contravention of said section 1 of the fourteenth amendment to the constitution of the United States.

We do not think any person is so deprived by the act of any right or privilege which another may lawfully enjoy. Section 11 of the act declares the ownership and title to the animals designed to be protected to be in the State of Illinois. Prior to the enactment the State had general ownership of animals *feræ naturæ,* not, however, as a proprietor, but in its sovereign capacity, as the rep-

resentative of the people and for the benefit of all of the people in common. (2 Cyc. p. 306.) Section 11 places the title and ownership in the State as a proprietor, and the individual may no longer acquire ownership by capturing, killing or reclaiming such animals, except in so far as permitted so to do by other provisions of the act. The sale by the constable, by virtue of said section 21, if of game, birds or fowl taken in the State, is therefore a sale of that which belongs to the State. The sale is under the laws of the State, and the purchaser, through the sale, takes title from the owner of the beast, bird or fowl which is sold. If the animal so sold has been taken in another State and brought into Illinois in violation of the statute it becomes subject to our laws, and the purchaser at the sale, under the act, becomes the legal owner of the animal so sold. The certificate of purchase issued to him protects him as such owner. But in that he has no privilege or right which is denied to any other person. The sale at which he obtains the right which is evidenced by the certificate of purchase is a public sale, open to every one. The time and place of the sale are made known to the public. All persons are alike free to attend the sale and to become bidders, and to acquire the right to be enjoyed by the successful bidder at the sale. No discrimination is exercised and no privilege arbitrarily bestowed on one citizen which is denied another; that is to say, every citizen may become a purchaser, and every purchaser possesses equal rights in that which he has bought. The fact that persons who might have become purchasers but did not do so do not acquire the rights which purchasers may enjoy under the act has no effect to bring the act within the condemnation of the amendment, for no one is thereby denied the equal protection of the law. The provisions of the act in question were enacted to effectuate a public purpose. All persons within the sphere of their operation who are similarly situated are affected equally and impartially.

The guaranties of the Federal constitution are not infringed by the act.   In the case of *Barbier* v. *Connolly*, 113 U. S. 27, the court, speaking of the fourteenth amendment, said: "Class legislation, discriminating against some and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." With reference to this amendment it is said in 6 Am. & Eng. Ency. of Law, (2d ed.) p. 967: "This guaranty prohibits laws which are capable of being exercised arbitrarily and with discrimination, unequally and unjustly, and without regard to legal discretion. State legislation is not obnoxious to this provision if all persons subject to it are treated alike, under similar circumstances and conditions, in respect both to the privileges conferred and the liabilities imposed."

The remaining objection is that the court erroneously modified one of the instructions asked in behalf of plaintiff in error.   The instruction as asked was as follows:

"*The jury are instructed, as a matter of law, that* if the jury believe, from the evidence, that the several confessions or admissions of the defendant testified to by the game warden and complaining witness who testified in this cause were extorted from the defendant by duress or fear, as by threats of violence, increased rigor of conviction or any other means which would inspire dread or alarm, then such confessions are not evidence, *and the jury should disregard them entirely in making up their verdict.*"

It is complained that the court erased the words appearing in italics and gave the instruction as thus modified.   The substance of the instruction as asked and as modified and given is identical, namely, that confessions or admissions obtained by violence, etc., are not competent to be received as evidence.   The modifications made by the court did not affect the rule of evidence involved in the instruction as asked or detract from the proper

influence of the charge to the jury. Moreover, the guilt of the plaintiff in error was abundantly established, and beyond all reasonable doubt, by other testimony than proof of his confessions or admissions.

The conviction was legal and just, and is affirmed.

*Judgment affirmed.*