TROUTMAN *et al. v.* CRIPPEN *et al.*

(*Knoxville*, September Term, 1936.)

Opinion filed May 10, 1937.*

*Designated for publication June 11, 1948.

JENNINGS & O'NEIL, LEE, COX & HIER, and FOWLER & FOWLER, all of Knoxville, for complainants.

CATES, SMITH & LONG, of Knoxville, for defendants.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

By the bill complainants attack the validity of chapter 183, Private Acts of 1937, the general purpose of which is to create a commission form of government for Knox County, so that its affairs shall be administered by three commissioners instead of by the Quarterly County Court, composed of twenty-five members. Such duties as are conferred upon said County Court by the constitution are unaffected by the act.

Under the provisions of the act such road duties as were being performed by complainants were transferred to the board of commissioners. They were legislated out of office, and no question is made as to their right to maintain this suit.

The bill was demurred to upon the ground that the involved act was valid. The Chancellor overruled the demurrer, being of the opinion that the act was unconsti-

tutional for the reason that the body of the act was broader than the caption, in the violation of Article 2, Section 17, of the State Constitution, but in his discretion permitted defendants to appeal to this Court, which appeal they have perfected. The cause has been fully argued and briefed.

The act, in its essential provisions, appears to have been patterned after Chapter 237, Private Acts of 1911, by which the administration of the affairs of Shelby County were transferred from the County Court to a Board of Commissioners, and which act was upheld by this Court in *Prescott* v. *Duncan*, 126 Tenn. 106, 148 S. W. 229. The reorganization features of the act under consideration are, upon principle, quite similar to Chapter 7, Pub. Acts of 1923, construed and sustained by this Court in *House* v. *Creveling*, 147 Tenn. 589, 250 S. W. 357. This latter act provided for the reorganization of the administration of the State. In both of these cases it was held that the legislation was congruous and germane to the subject expressed in the caption; that such legislation did not deprive officials of any property rights; and that these acts brought about a change in the form of government, and were not colorable. In the former case (*Prescott* v. *Duncan*) it was expressly held that the Legislature may deprive the County Court of all power not conferred upon it by the Constitution and vest it in such agencies as it deems proper to create for the purpose of administering the affairs of the County. The purpose of the Legislature in the passage of the act under consideration was manifestly to transfer certain clearly expressed administrative duties from the County Court, and certain other agencies, to the newly created Board of Commissioners, and this, upon the authorities cited, it had the power to do.

The caption of the Act of 1937 is as follows:

"An Act entitled An Act to centralize, consolidate and reorganize county administrative affairs in all counties of this State having a population of not less than 154,000 or more than 157,000 inhabitants according to the Federal Census of 1930 or any subsequent Federal Census; to create a Board of County Commissioners for said counties; provide for their appointment, election and qualification; to prescribe their duties and fix their compensation; to anticipate revenues and borrow money on the pledge thereof; to authorize the employment by said Board of all subordinate officials and provide for their compensation; to divest the County Court of certain administrative and appointive powers and vest the same in the Board of County Commissioners and the departments created hereunder; to abolish certain offices and agencies, including the Board of Highway Commissioners and office of Superintendent of Roads created by Chapter 343 of the Private Acts of the General Assembly for the year 1925, as amended, and the transfer of certain of their powers, duties and functions as therein defined to the Board of County Commissioners; to repeal Chapter 192 of the Private Acts of the General Assembly for the year 1931, creating the office of Purchasing Agent in certain counties, and vesting all details of purchasing in the Department of Purchasing and Finance as created by this Act; and to repeal all laws and parts of laws in conflict with this Act."

The title of the act considered in *House* v. *Creveling* is in this language:

"An Act to reorganize the administration of the State in order to secure better service, and through co-ordin-

ation and consolidation to promote economy and efficiency in the work of the government; creating and establishing certain department[s] and offices, and prescribing their powers and duties; fixing certain salaries; abolishing certain offices, boards, commissions, and other agencies, and repealing conflicting Acts and parts of Acts.''

The caption of the act involved in *Prescott v. Duncan* is as follows:

''An Act to create a Board of County Commissioners in Counties having a population of one hundred and ninety thousand or more according to the Federal census of 1910 or any subsequent Federal census; to provide for their election, qualification, and removal; and to prescribe their duties and fix their compensation.''

It will be observed that there is a similarity in all three captions. All are general and not restrictive. The 1937 act is broader and more comprehensive than the others, which, however, does not render it objectionable. A restrictive title to an act is one where a particular part or branch of a subject is carved out and selected as the subject of the legislation, and under such a title, the body of the act must be confined to the particular subject expresed in the limited title. *Memphis St. Railroad v. Byrne*, 119 Tenn. 278, 104 S. W. 460.

In *House v. Creveling* the title is ''An Act to reorganize the administration of the State''; in *Prescott v. Duncan* the title is ''An Act to create a Board of County Commissioners''; in the instant cause the title is ''An Act entitled An Act to centralize, consolidate and reorganize county administrative affairs.'' The remainder of the title is merely an amplification of the subject stated. There is no basis whatever for hold-

ing that this title is restrictive, and a careful reading of the act convinces us that every part thereof is congruous and related to the title.

Counsel for complainants assert that the act in question is far more drastic, omnibus and ruthless in seizure of power than was contained in the act involved in *Prescott* v. *Duncan*. From the statement appearing in the opinion in that case on page 113 of 126 Tenn.. on page 230 of 148 S. W., it will be noted that this criticism is without merit. By that act the County Court was divested of all of its duties and functions, except the levying of taxes, electing a coroner and ranger, and filling the vacancies in county offices in certain contingencies provided by the constitution and not covered by the act. While the 1937 act may abolish certain offices and confer certain duties on the board not contained in the 1911 act, the principle involved in both is the same, and all of the provisions of the act are germane to the title.

Both acts of 1911 and 1937 require the Board of Commissioners to submit annual budgets to the County Court covering the amount of money necessary to defray the operating expenses of the county for the ensuing year in order that the court may determine the amount of taxes necessary to raise. The only difference in the two acts as to this matter is that the latter act makes the levying of a tax sufficient to take care of the budget mandatory. Because of this provision it is insisted that the legislature has, in effect, delegated to the Board of Commissioners the authority to levy taxes, a legislative function not covered by the title of the act, which only confers administrative powers upon said board. This contention is predicated

upon the recital in the caption "to centralize, consolidate and reorganize county *administrative* affairs." (Italics ours) In law the word "administration" is thus defined in Webster's New International Dictionary: "In its broadest sense, the activity of the state in the exercise of its political powers, including the action of the legislative, judicial, and executive departments." It was in this sense that the term "administrative affairs" was used in the caption of the act. In *Shields* v. *Williams*, 159 Tenn. 349, 370, 19 S. W. (2d) 261, 268, it is said:

"When tested by constitutional provisions such as section 17 of article 2 of our Constitution, just as when tested by other constitutional provisions, every doubt is to be resolved in favor of the validity of an act of the Legislature. The rule is well settled that:

" 'If the words in a title, taken in any sense or meaning which they will bear, are sufficient to cover the provisions of the Act, the Act will be sustained though the meaning so given the words may not be the most obvious or common.' Lewis' Sutherland, Statutory Construction, sec. 127, citing *Meul* v. *People*, 198 Ill. 258, 64 N. E. 1106; *In re Pinkney*, 47 Kan. 89, 27 P. 179; *Stewart* v. *Thomas*, 64 Kan. 511, 68 P. 70; *State* v. *Northampton Tp.*, 52 N. J. L. 496, 19 A. 975."

Upon the assumption, therefore, that the legislature intended to confer upon the board the power to levy taxes, we think the caption is broad enough, under the authorities cited, to cover that subject.

It may well be doubted, however, whether the legislature entertained such a purpose. By section 1045.1 of the Code the County Court is directed to levy an annual tax for county purposes. The County Court, in addition to the tax which it is directed to levy by the

1937 act, also levies taxes for schools, for defraying the expenses of the Court, and for other purposes. We are of the opinion that the legislature, by this new act, did' not intend to repeal the above statute. The legislature provided that the Board of Commissioners should submit a budget for the information of the County Court, and make it mandatory upon the Court to levy a tax that would meet the requirements of the budget in toto. Complainants contend that the legislature, by depriving the County Court of any discretion as to this budget, in effect transferred the authority to tax to the board of commissioners. If this be conceded, we think the legislature had the right to confer such authority upon the board. Article 2, section 29, of the constitution provides: "The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law." The county, as an arm of the state, can only function through such agencies as the legislature deems fit to appoint, and the constitution imposes no restraint upon the exercise of this power by the legislature. The legislature can designate the County Court, or such other agency as it sees fit to create, to administer the affairs of the county. *Cannon County* v. *Hoodenpyle*, 26 Tenn. 145, 146; *Grant* v. *Lindsay*, 58 Tenn. 651; *Railway Company* v. *Wilson County*, 89 Tenn. 597, 15 S. W. 446; *Redistricting Cases*, 111 Tenn. 234, 256, 80 S. W. 750; *State ex rel.* v. *Powers*, 124 Tenn. 553, 137 S. W. 1110; *Prescott* v. *Duncan*, *supra.* In the last-named case, after reviewing the authorities upon the delegation of the taxing power, the Court said [126 Tenn. 106, 148 S. W. 237]:

"In all of the foregoing cases, except the case of State v. Powers it may be conceded that the quotations made are *dicta* of judges delivering the opinions. They, however, indicate the view that this court has entertained with respect to the jurisdiction and powers of the County Court. The latter case, however, is directly in point and is authority for the proposition that the Legislature may confer power to levy taxes upon another body than the County Court."

As was stated in *State ex rel.* v. *Powers, supra* [124 Tenn. 553, 137 S. W. 1115]:

"We are furnished with no authority for the proposition that it is beyond the power of the Legislature to delegate the taxing power to a proper county agency other than the quarterly court, and we would be slow to reach such a conclusion."

Had the framers of the constitution intended to limit the delegation of the taxing power to the County Court it would have said so, and we are of the opinion that such was not intended; and upon reason we see no cause for designating the County Court as the exclusive agency for administering the affairs of the county if the people prefer some other form of local government.

By another assignment of error it is claimed that the Act of 1937 is void because it attempts to legislate complainants out of office. This Court has uniformally held to the contrary. *Powers* v. *Wiseman*, 167 Tenn. 140, 67 S. W. (2d) 142; *Haggard* v. *Gallien*, 157 Tenn. 269, 8 S. W. 2d 364; *Goetz* v. *Smith*, 152 Tenn. 451, 278 S. W. 417; *House* v. *Creveling, supra*; *State ex rel. Linkous* v. *Morris*, 136 Tenn. 157, 163, 189 S. W. 67; *Van Dyke* v. *Thompson*, 136 Tenn. 136, 189 S. W. 62; *Prescott* v. *Duncan, supra*. In *Goetz* v.

*Smith* the applicable rule was thus stated [152 Tenn. 451, 278 S. W. 420]:

"It cannot at this time be contended that an office holder may complain, if, in the public interest, and by way of putting into effect a new system, the Legislature repeals statutes, the effect of which is to abolish offices not protected by the Constitution."

Neither of the complainants was legislated out of any constitutional office.

 It is further insisted that the statute violates article 1, section 8, and article 11, section 8, of the constitution, in that it is a special law that operates to suspend a general law of the state. This contention, as we understand counsel, is based upon the idea that in all other counties of the state, with the exception of Shelby County, the local affairs are administered by the County Court, thus depriving the citizens of Knox County of the form of government prevailing in the other counties. This identical situation was presented in *Prescott* v. *Duncan, supra,* where the same duties were transferred to a board of commissioners, with a few minor additions. The law was not changed by the 1937 act, and is the same as that in effect in the other counties. The status of the citizenry of Knox County is not affected by the statute. The only change is with respect to the instrumentality selected to administer the law. The constitution contains no restraint upon such legislative action, as was declared in *Prescott* v. *Duncan.* The rule is firmly established in this State that in order to render a statute invalid, under the above provisions of the constitution, it must primarily affect the citizens of the county in their individual relations. *State ex rel.* v. *Hamilton County,* 170 Tenn. 371, 95 S. W. (2d) 618; *Lewallen* v. *Hawn,* 166

Tenn. 466, 63 S. W. (2d) 1008; *Shanks* v. *Hawkins County*, 160 Tenn. 148, 22 S. W. (2d) 355; *State ex rel.* v. *Trotter*, 153 Tenn. 30, 281, S. W. 925; *Peters* v. *O'Brien*, 152 Tenn. 466, 278 S. W. 660; *State ex rel.* v. *Stewart*, 147 Tenn. 375, 247 S. W. 984. With respect to the right of the legislature to authorize a change in the form of government, this Court, in *House* v. *Creveling*, said [147 Tenn. 589, 250 S. W. 361]:

"Chapter 298 of the Acts of 1909 gave Memphis another charter—a commission form of government, instead of the bicameral form. The effect of this act was to abolish certain offices and to turn out certain officers, and this same attack sucessfully made on the act of 1907 was made on the act of 1909.

"This court, however, in an elaborate and carefully considered opinion by Justice SHIELDS, sustained chapter 298 of the Acts of 1909. *Hunter* v. *Crump*, MS. Jackson, 1910. The Court held it competent for the Legislature to change the plan of government under which a municipal subdivision of the state had hitherto functioned, when it seemed best to the Legislature to do so; that, although a change might inflict upon municipal office holders the loss of their offices, nevertheless these officers had no such rights to their offices as could be asserted to the frustration or impediment of the new scheme."

It is firmly settled, furthermore, in this jurisdiction that special laws may be passed affecting counties, municipalities, school districts, and the like, as arms or agencies of the state. *Nashville, C. & St. L. Ry.* v. *Marshall County*, 161 Tenn. 236, 30 S. W. (2d) 268; *Union County* v. *Toliver*, 159 Tenn. 699, 22 S. W. (2d) 236; *State Highway Department* v. *Mitchell's Heirs*, 142 Tenn. 58, 216 S. W. 336; *Quinn* v. *Hester*,

135 Tenn. 373, 186 S. W. 459; *Todtenhausen* v. *Knox County*, 132 Tenn. 169, 177 S. W. 487; *Redistricting Cases*, 111 Tenn. 234, 80 S. W. 750; *Williams* v. *Nashville*, 89 Tenn. 487, 15 S. W. 364; *Ballentine* v. *Pulaski* 83 Tenn. 633; *State* v. *Wilson*, 80 Tenn. 246. *In Richardson* v. *Young*, 122 Tenn. 471, 125 S. W. 664, and *House* v. *Creveling*, *supra*, it was shown that as a matter of practice it has been found impossible to preserve entirely the theoretical lines between the three departments of government. As previously stated, the duties devolved upon the board of commissioners are primarily of a governmental nature. If the statute contains powers that do not fall within that category they can easily be elided. *Crockett County* v. *Walters*, 170 Tenn. 337, 95 S. W. (2d) 305; *Goetz* v. *Smith*, *supra*.

It is finally insisted that section 9 of the Act violates article 2, section 2, of the Constitution, which provides:

"No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted."

Section 9 of the Act is as follows:

"That said Board of County Commissioners shall have the power to contract with any other unit of government or governmental agency, whether municipal, county, State or Federal, for the consolidation of kindred services and the exercise thereof in such manner as may be determined upon by said Board."

The bill does not allege that complainants are in any wise affected by this provision of the act, hence they are not in a position to question its validity. *Richardson* v. *Young*, *supra*; *Sun Coal Co.* v. *State*, 157 Tenn. 522, 11

S. W. (2d) 893; *House v. Creveling, supra.* In the last-named case it was said:

"We have heretofore noted that certain legislative powers are customarily given to administrative officers. Whether the power here conferred on the Commissioners is in contravention of section 1 and section 2 of article 2 of the Constitution is a question that does not arise on this record. It will be time enough to determine this question when it is raised by some removed officer or employe of other person adversely affected."

Much complaint in the bill is directed to the wisdom, motive, and political aspect of the involved legislation, matters with which the courts have nothing to do. *Nashville, C. & St. L. Ry.* v. *Baker,* 167 Tenn. 470, 71 S. W. (2d) 678; *Railroad Co.* v. *Harris,* 99 Tenn. 684, 43 S. W. 115, 53 L. R. A. 921; *Williams* v. *Nashville, supra; Corporation of Knoxville* v. *Bird,* 80 Tenn. 121, 49 Am. Rep. 326. What we have said covers in a general way the various constitutional objections interposed to the 1937 act. All of the questions raised have been heretofore considered and determined by this Court. The situation, as we view it, is simply this: The Legislature, whether wisely or unwisely, has seen fit to transfer the administration of the governmental affairs of Knox County from the County Court to a board of three commissioners. The act recites that this change is made in order that the administrative affairs of the county "may be more effectively attained and more economically and efficiently administered." That the Legislature has a right to thus reorganize the county government was declared by this Court more than a quarter of a century ago.

Our conclusion is that chapter 183, Private Acts of 1937, is valid. It follows that the decree of the Chancellor will be reversed, the demurrer to the bill sustained, and the bill dismissed.