G. W. MORTON *et al. v.* HANCOCK COUNTY *et al.*

*(Nashville,* December Term, 1929.)

Opinion filed July 21, 1930.

A. T. Drinnon, for complainant, appellee.

Phillips & Hale, for defendant, appellant.

Mr. Justice McKinney delivered the opinion of the Court.

Mr. and Mrs. Morton instituted this proceeding against the County Board of Education of Hancock County for the purpose of establishing their claims for services as teachers in the County High School at Sneedville during the scholastic year 1927-28. The contest is narrowed to the salaries they are entitled to receive. The chancellor held that they were entitled to $170 and $96, respectively, per month for the nine months' term. The Court of Appeals raised the amounts to $200 and $120 per month.

An act to establish and maintain a uniform system of Public Education was passed by the Legislature in 1925. Among the duties assigned to the County Superintendent under said act are the following:

"(2) To attend all meetings of the County Board of Education and to serve as a member of the Executive Committee of said Board without additional compensation."

"(25) To prepare annually a budget for the schools in his county, to submit the same to the County Board of Education for its approval, and to present it to the County Court for adoption at its April session, which budget shall set forth in itemized form the amount necessary to operate the schools of the county for the scholastic year beginning on the first day of July following: Any change in the expenditure of money as provided for by the budget shall be first ratified by the County Board of Education and the County Court."

The County Board of Education is required:

"To elect principal, supervisors, teachers, attendance officers, clerical assistants and other employes authorized by this Act, and to fix salaries for such authorized positions according to the provisions of this Act; and to make written contracts with all employes. No member

of the County Board of Education shall be eligible for election as teacher, or any other position under the Board carrying with it any salary or compensation.''

It is further provided:

''The Chairman of the County Board of Education and County Superintendent shall constitute the Executive Committee of said Board of Education and the duties of said Executive Committee shall be:' . . .

''2. To advertise for bids and let contracts authorized by the County Board of Education.''

The section of the act which the County Board of Education principally relies upon is in this language:

''All teachers must make a written contract with the County Board of Education at a fixed salary per month before entering upon their duties in any public elementary or high school. Said contract shall be in such form as may be furnished by the State Commissioner of Education and shall be signed in duplicate, each party holding a copy. Failure to comply with the provisions of this section in this Act by either or both parties shall subject the teacher and the County Board of Education to a fine of not less than twenty-five dollars ($25).''

█ Mr. and Mrs. Morton had taught in the High School at Sneedville the preceding year, 1926-27, for salaries of $200 and $120, respectively, per month, and were so engaged when the County Board of Education at a meeting held on February 7, 1927, took the following action, as appears from the minutes, to-wit: ''Resolution passed in favor of hiring Sneedville H. S. faculty again. Adjourned to Febry. 19th.''

At a meeting held on Monday, April 4, 1927, the salaries of complainants were fixed at $200 and $120, respectively.

The effect of these proceedings was an offer by the Board to employ complainants for another year at the same salaries they had been receiving. On April 13, 1927, Mr. Morton wrote a letter to the Board accepting this offer for himself and wife. This constituted a valid contract.

In compliance with the requirement of the statute, complainants, before entering upon their duties under the new agreement, executed a written contract, which also bore the signature of the Chairman of the Board, but which the County Superintendent declined to sign. This contract was filed with the Superintendent about October 1st, as required by the statute, and complainants entered upon and performed their duties under the agreement.

On June 6, 1927, the County Board passed the following resolution:

"Salaries of all high school teachers in the county cut 20 per cent from last year's salaries in order that each year operate within the budget."

The County Superintendent, being of opinion that he was bound by this resolution, refused to execute the contract calling for higher salaries.

Presumably, there being no evidence to the contrary, the budget was adopted by the County Court on April 4, 1927, and the Board met the same day and fixed the salaries of complainants. We will assume that the salaries were in accordance with the budget, as the law provides. This presumption is further strengthened by the failure of the Board to introduce the budget in evidence, and there is no direct testimony that the salaries, as fixed, were not provided for in the budget.

We further hold that the statement in the resolution of June 6, 1927, is in the nature of a self-serving

declaration, which, unexplained, is not sufficient to overcome the presumption that the salaries of complainants conformed to the budget.

The principal defense relied upon is that the contract is invalid because not reduced to writing and signed by the parties.

The form of contract executed by complainants and the Chairman of the Board was that provided by the State Commissioner of Education, which required the signatures of the Superintendent and the Chairman on behalf of the Board. It is also shown that it has been the custom for contracts to be signed by the Chairman and Superintendent.

In view of the provisions of the act quoted above, we hold that it contemplates the execution of contracts by the Chairman and Superintendent on behalf of the Board, and such is the construction placed thereon by the State Commissioner of Education.

There is no provision in the act declaring contracts void unless reduced to writing and signed by the parties, or that a contract shall not be binding until reduced to writing and signed. It is provided that a failure in this regard shall subject the parties to a fine. This is the only penalty provided for such omission.

In *Collins* v. *Janey,* 147 Tenn., 485, it was held that a contract entered into by the Board of Education was not invalidated by the arbitrary refusal of the Chairman to execute the agreement when reduced to writing. Were it otherwise one member could thwart the will of the majority. It is not the ministerial act of signing that makes the contract. The writing is but the evidence of the agreement.

We hold, as did the Court of Appeals, that the contract here involved is valid.

Complaint is made of the allowance of interest from the date on which the bill was filed. The Chancellor and Court of Appeals concurred as to this, and the facts do not justify us in holding that they abused their discretion.

Writ denied.