622

State ex rel. Don D. Bobo, Complainant,

*v.*

County of Moore et al., Defendants.

(*Nashville,* December Term, 1959.)

Opinion filed December 9, 1960.

JAMES L. BOMAR, JR., JAMES C. BURNS, JR., Shelbyville, for appellant County of Moore.

WYATT & HICKERSON, Tullahoma, for appellee Bobo.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

Complainant Bobo filed the present suit against Guy H. Ervin, Superintendent of the Moore County school

system, the County Board of Education of Moore County and the County of Moore for the purpose of enforcing the judgment obtained in a prior litigation against the first two above named defendants. Ervin has filed an answer, there is a pro confesso judgment against the County Board of Education and a demurrer was filed by the County of Moore which was overruled on all grounds except one not necessary to mention and the case comes to us on a discretionary appeal.

We adopt the Chancellor's statement of the material allegations of the bill as follows:

"On a former day the relator filed a bill in this Court seeking a decree against the Superintendent and the Board of Education holding that relator held the position of supervisor and attendance teacher of the Moore County school system. The final decree rendered in that cause held that Bobo was the supervisor and attendance teacher since the beginning of 1959-1960 school year and that he was entitled to all the rights, benefits, and salaries of the position. The relator is now, and has been performing the duty of supervisor and attendance teacher and has permanent tenure rights under the Teacher Tenure Act. On December 30, 1959, the Board of Education adopted a resolution to amend the school budget so as to provide for relator's salary and adopted another resolution directing the Superintendent to present the amendment to the January, 1960 term of the Quarterly County Court. Although the resolutions were not presented by the Superintendent, they were read to the Quarterly County Court by the Chairman, but the Court refused to take any action toward amending the school budget to provide for relator's salary.

"Both the Board of Education and the Quarterly County Court have failed to adopt a budget which would provide for relator's salary and travelling expenses. The bill prays for a recovery of salary and travelling expenses against the Board of Education; injunction and mandamus requiring the Board of Education to adopt a budget providing for relator's salary and travelling expenses; and mandamus and injunction requiring the County Quarterly Court to adopt a budget providing for relator's travelling expenses and salary and further requiring the levy of the necessary tax."

The assignments of error rely upon the same propositions urged by the demurrer. The substance of the first four grounds of the demurrer is that the Chancery Court does not have jurisdiction of an action to require the Quarterly County Court to adopt a budget or to make any amendments thereto, because (1) such action is solely within the discretion of said Quarterly County Court, (2) the judicial department will not interfere with a coordinate department of the state government, and (3) the Quarterly County Court on the recommendation of the County Board of Education has already adopted such a budget, as shown on the face of the petition, and has levied adequate taxes to cover same. The fifth ground is that the relator was not recommended by the Superintendent. The seventh ground is that the Board of Education has neither adopted nor recommended to the Quarterly Court an amended budget. The eighth is that the relator has no contract with the County and, therefore, there is no obligation which relator is entitled to enforce against the County. The ninth is that the decree in the former suit is broader than the bill warrants. The tenth

ground raises the question of whether Moore County is bound by the decree pronounced in the former suit.

For the sake of clarity, we deem it necessary to refer back to the allegations of the bill in the former suit. Also to the fact that the decree in that case recites that it was heard, among other things, on the bill, the answer of the Superintendent Ervin, upon the pro confesso against the Board of Education, upon the testimony of witnesses examined in open court, the statements of counsel and upon the whole record, from all of which it appeared to the Court that the allegations of the bill were sustained by the proof.

The bill in that case alleged that complainant was then the attendance and supervisor teacher of Moore County schools; that he believed that he had acquired tenure rights under the "Teacher Tenure Law"; that his rights had been transgressed in various ways; that by reason of a personal grudge held by said Superintendent against complainant because the latter had opposed him in a recent election for County Superintendent, though unsuccessfully, the said Superintendent without the approval of the Board of Education and in violation of T.C.A. sec. 49-1411 had attempted to dismiss and abolish the position occupied then by complainant and/or to transfer petitioner from his then position to another; that on April 7, 1959, he was unanimously reelected by the Board of Education to the position of attendance and supervisor teacher but that the Superintendent stated to the Board that he would not recommend the petitioner for that position and would deny him that position to which he had been elected; further, that said Superintendent in violation of his duty had failed and refused to record upon the minutes said action of the Board in reelecting him and

had failed and refused to provide the Tennessee Department of Education with the necessary forms to qualify petitioner for the salary to which he was entitled as the incumbent of said position.

The prayer was to establish his tenure status in that his rights have been violated and that he should be restored to his position for the school year 1959-60 to which he had been elected; that a mandatory injunction require the Superintendent to reinstate relator and to file the necessary forms with the Tennessee Department of Education, that a temporary injunction restrain the Superintendent from taking any further action to transfer or otherwise deprive relator of his position; that he be required to complete the minutes so as to show said election, and for general relief.

It, therefore, seems to this Court that when the Chancellor decreed as heretofore stated in favor of the relator and further provided that the decree was to remain open in order that the conditions heretofore set out be complied with and the case should be retained on the docket, the only fair inference is that said Superintendent was guilty of the wilful and unlawful conduct charged against him in the bill; and that such conduct was not concurred in by the County Board of Education and was contrary to their desires in the matter.

It, therefore, becomes apparent that the case, according to the allegations in the original suit, the decree based thereon and the allegations of the present suit, the relator Bobo has a valid contract of employment with the Board of Education and is, therefore, entitled to all of the emoluments thereof, but the enforcement of same is being thwarted by the arbitrary and capricious use of power by

the defendant Superintendent. Under such circumstances the courts will not tolerate the use of such power. *State v. Yoakum*, 201 Tenn. 180, 297 S.W.2d 635. In that case the situation was reversed in that the Board undertook to transfer certain teachers contrary to the recommendation of the Superintendent. The relevant statutes are set out therein and need not be here repeated.

On page 189 of 201 Tenn., on page 639 of 297 S.W.2d, the Court said:

"* * * Thus it is seen that the superintendent of county schools for this State is not an employee of the school board but that the school board does by statute assign and designate certain duties to the county superintendent. * * * Yet there is the general tenor of the statute creating the board providing what they shall assign to the superintendent and placing the final power as to the management of the schools in that board."

On page 190 of 201 Tenn., on page 640 of 297 S.W.2d, the Court said:

"The duties of the superintendent are highly important but they do not with respect to essential features of school management override the authority of the school board. * * *"

On page 193 of 201 Tenn., on page 641 of 297 S.W.2d, referring to the insistence that the transfer of a teacher could be effected only by the joint action of the superintendent and the board of education, the Court said:

"It seems to us that this conclusion would bring about intolerable results under certain situations wherein either the board or the superintendent refused to move. * * * Someone must have a final say. True it

is the recommendation should be made by the superintendent who knows more about such things, but at the same time the board were elected for this purpose among others and are to have the final say as to whether or not this recommendation is carried out.''

■ It is no longer the law in Tennessee that a teacher's contract must be in writing and signed. *Morton v. Hancock County,* 161 Tenn. 324, 30 S.W.2d 250.

We sense from the foregoing that the Board of Education has been under the impression that they could not act without the recommendation of the Superintendent and without his having prepared the proper budget. The above cited case refutes this idea. Also that the County fears that it will lose its contribution of State funds unless the relator has the recommendation of the County Superintendent, which is ground No. 5 of the demurrer. In overruling this ground the Chancellor pointed out the language of Acts of 1959, Ch. 14, Sec. 4(b) which only requires such recommendation in order to meet the *maximum* foundation program of an equalizing county, and not the *minimum* as provided in the 1957 Act, c. 53. Moreover, in view of the situation apparent in this case a court of equity could correct the situation so as to prevent that result by acting either *in personam* upon the person of the Superintendent or other recalcitrant official, or by force of direct decree. Gibson's Suits in Chancery, 5th Ed., Sec. 41; T.C.A. secs. 21-1203 to 21-1209.

■ It seems proper to consider first the tenth ground of the demurrer which raises the question of *res adjudicata,* i. e., whether the County is bound by the former decree. If the County is in privity with the Board of Education, the principle of *res adjudicata* applies.

T.C.A. sec. 5-103 provides:

*"Corporate capacity.*—Every county is a corporation, and the justices in the county court assembled are the representatives of the county, and authorized to act for it."

The foregoing statement, however, does not mean that no other body can act in certain capacities for the county. This has been free from any doubt ever since the case of *Prescott v. Duncan,* 126 Tenn. 106, 148 S.W. 229, in which was upheld the Act which created the Shelby County Commission and invested in the Commissioners practically all the duties and powers in administering the affairs of the county except those conferred upon the County Court by the Constitution.

The County Board of Education has exclusive management and control of the county schools including the right to contract and be contracted with. *Benson v. Hardin County,* 1938, 173 Tenn. 246, 116 S.W.2d 1025.

In *State ex rel. Boles v. Groce,* 152 Tenn. 566, 570, 280 S.W. 27, 28, the Court said:

"* * * The members of this board are county officers. * * *

"The county court has nothing to do with the fixing of salaries or the employment of teachers, and, should the board act contrary to its wishes in such matters, it has no power to review or supervise its action.

"The county court necessarily has to levy a tax for creating needed school funds, because it is the only agency clothed with such power, and this duty is enjoined upon it by the state.

* * * * * *

"The county board of education is a separate and distinct entity from that of the *county court,* created by the state, with well defined powers and duties, over which the county court has no supervisory jurisdiction."

The case holds that the Board of Education is a separate entity from the County Court but it does not say that it is separate from the County. While it was held in *Benson v. Hardin County,* supra, that a school bus driver under contract with the Board of Education had no cause of action against the County for his salary, that was simply because he made his contract with the Board of Education which is required to operate within its budget, handled the details of such contracts for the county, and has the duty to include such liabilities within the budget submitted to the County Court which is the agency which has the duty of fixing the tax in order to raise the revenue to pay off this and other obligations and operating expenses generally of the County. That does not mean, however, that there is no privity between the Board of Education and the County itself, because the interests of both the Board of Education and the County in the subject matter are the same. This principle is rather clearly and interestingly illustrated in *Cantrell v. Burnett & Henderson Company,* 187 Tenn. 552, 216 S.W.2d 307, and authorities cited therein.

Accordingly, we hold that the County is bound by the judgment rendered in the former suit between the parties.

Even though the County is therefore, not entitled to re-litigate the questions decided in the former suit, there remains, under the several assignments of error, the question of whether the relator may enforce his rights

through the processes of the court and how the same is to be done.

In *Smith v. Groce,* 158 Tenn. 255, 12 S.W.2d 715, it was held that the County Court may be compelled by mandamus to levy a tax, but not in any certain amount and in its discretion it may levy a high school tax at less than the amount fixed in the budget of the Board of Education.

In *State ex rel. Brown v. Polk County,* 165 Tenn. 196, 54 S.W.2d. 714, it is held that the County Court has discretion in fixing the amount of tax and is not bound by the budget submitted by the superintendent under T.C.A. sec. 49-214(12). But on page 199 bot. of 165 Tenn., on page 715 of 54 S.W.2d the Court said this must be a *reasonable* discretion.

In that case, however, the Court was speaking of a situation where the Board of Education had made a contract with a teacher for a term of 5 years, extending beyond the term of the Board itself. Necessarily this was a total obligation exceeding the amount of the annual budget for the current year and in advance of approval of the budget by the County Court.

On page 200 of 165 Tenn., on page 716 of 54 S.W.2d the Court stated that the Act contemplated a reasonable coordination between the two agencies of the County. "Without such co-ordination, there would be great confusion in the fiscal affairs of the counties."

Therefore, it must follow that the courts are the final arbiters of whether discretion has been reasonable or capricious.

Surely, however, that discretion does not embrace either arbitrary action, or action taken under a misapprehension of the factual situation. Quite naturally if the Superintendent or the County Board of Education, or both, should be guilty of bad faith in attempting, for instance, to impose a fraudulent or highly excessive burden upon the treasury of the County, the law could not be otherwise than that the County Court would have the power to limit such activity to reasonable and fair bounds. On the other hand, an uncontrolled discretion vested in the County Court would enable it to hamstring and render ineffective the administration of the county schools. Therefore, where it appears, as in this case, from the allegations which for the purpose of demurrer must be taken as true, that the present difficulty is brought about by the capricious and illegal attempt of the Superintendent to deny the relator his just rights, there can be no question of the jurisdiction of a court of equity to do what is necessary to protect the relator in that regard.

It is suggested somewhere in the record by the Superintendent that there is no known authority for amending the budget. In *State ex rel. Pierce v. Hardin,* 163 Tenn. 471, 477, 43 S.W.2d 924, it is held that if the Board is acting in a legislative capacity it may reconsider previous action, but not if in the exercise of a political or executive power, such as the election of a superintendent, etc.

The suggestion in behalf of the County that it would be an infringement of one department of government, the judicial, upon another department for the court to undertake to require the County Court to provide for satisfaction and payment of just contract debts incurred by the Board of Education for the benefit of the County is with-

out merit as appears from *Smith v. Groce,* supra; *State ex rel. Harned v. Meador,* 153 Tenn. 634, 284 S.W. 890, and innumerable other cases.

In view of all of the foregoing we are of opinion that the County should be retained as a party until the whole situation may be fully developed before the Chancellor; we can hardly conceive of a failure of such an honorable and representative body as the County Court of Moore County to do justice, as the same may appear to be meet and proper after a full hearing.

Accordingly, we overrule the demurrer and remand for further proceedings.

The costs of this appeal are taxed against Guy H. Ervin personally.