THE SHELBY COUNTY BOARD OF COMMISSIONERS et al.,
Appellees,

*v.*

THE SHELBY COUNTY QUARTERLY COURT et al., Appellants.

392 S.W.2d 935.

(*Jackson,* April Term, 1965.)

Opinion filed July 15, 1965.

474

WINCHESTER, GOFF, WINCHESTER & WALSH, Memphis, for appellants.

BUCHIGNANI & GREENER, Memphis, for appellees.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

The Shelby County Board of Commissioners, as a majority and individually, hereinafter referred to as the complainants, brought this suit for a declaratory judgment and injunction under authority of T.C.A. Section 23-1101 against the Shelby County Quarterly Court, as a majority and individually, hereinafter referred to as the defendants, in the Chancery Court of Shelby County.

The original bill alleged that Chapter 237, Private Acts of 1911, invested the Board of Commissioners ''with

practically all the duties and powers in administering the affairs of the County except those few matters conferred upon the County Court by the constitution * * *.'' It was then alleged the defendants have attempted to exercise broad authority over the affairs of the County contrary to law. The Chancellor was requested to declare the ''rights and status and other legal relations,'' of the parties under various Acts of the legislature as to which a present controversy existed. In substance, the bill sought an answer to the following questions:

1. Which body had the power to appoint the County members to the Coliseum Board, which was to be a joint City-County Board to supervise and administer the affairs of the Coliseum, a building for entertainment, social, athletic, and other functions of Memphis and Shelby County?

2. Which body had the appointing and employment authority for the County Building Department, and the County Building Code Board of Appeals?

3. Which body had the power to appoint members to the County Board of Electrical Examiners?

4. Which body had control of the County Budget?

Three of the members of the Shelby County Court, Herbert B. Moriarty, Jr., Edward W. Cook and George Grider, answered the bill and admitted that complainants were entitled to a declaratory judgment and requested the Chancellor to declare the duties and responsibilities of each body with respect to administering the various affairs of the County.

The remaining eight members of the County Court demurred to the bill. The Chancellor overruled the demurrer and ordered these defendants to answer.

By their answer, these eight defendants denied complainants were entitled to a declaratory judgment. Their answer denied complainants were vested with practically all the duties and powers in the administration of the County's affairs; and averred the defendants were not limited to constitutional functions. Their answer further averred the plan of government of Shelby County was one of "checks and balances," and the answers to the questions propounded by complainants in their bill should be answered in favor of the defendants.

The facts were stipulated, and the Chancellor filed an exhaustive and able opinion, the pertinent parts of which we will set out hereinafter, in which he held the complainants were the executive and administrative body of the County, except when it is by law otherwise provided.

The eight defendants referred to hereinabove have appealed to this Court and have filed five assignments of error. Complainants have likewise appealed and have filed two cross assignments of error.

The first assignment of the defendants complains of the action of the Chancellor in overruling the demurrer. The demurrer contains twenty-one grounds.

The first ground of the demurrer is complainants had no right to file this suit. It is argued "the County Commission is a product of Private Act and the individual members thereof constitute duly elected county officials. Nowhere in any of the Private Acts relating to the County Commission is the right conferred upon said Commission to sue or be sued."

Defendants cite and rely on the case of *Joyner v. Priest*, 173 Tenn. 320, 117 S.W.2d 9 (1938), in support of this insistence.

■ The Board of County Commissioners is a body created by Chapter 237 of the Private Acts of 1911, as amended by Chapter 215 of the Private Acts of 1957; and is an executive and administrative body charged with the administration of County business. It would be absurd for the legislature to create a board to administer the business affairs of a local government and not enable it to enforce its legal rights.

Section 23-1101 of Chapter 11 of T.C.A., our declaratory judgments Act, provides:

"The word 'person' whenever used in this chapter, shall be construed to mean any person, partnership, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever."

We do not think the decision in the case of *Joyner v. Priest,* supra, controls this issue. There, the parties seeking a declaratory judgment were a District Attorney General, a Sheriff, a foreman of a grand jury, a state official, and various taxpayers of Shelby County.

The object of the suit was to test the constitutionality of an Act creating a crime commission; and in the event the Act was found valid the complainants sought a judgment declaratory of their rights, duties and obligations thereunder.

This Court upheld the validity of the Act but declined to declare the rights and duties of the complainants thereunder because no rights were involved upon which a declaratory decree could be made. No board, commission or group, functioning as such, was involved.

In the case of *Washington County Election Commission v. City of Johnson City,* 209 Tenn. 131, 350 S.W.2d

601 (1961), the Election Commission was permitted to maintain a suit for declaratory judgment. Furthermore, in the case at bar the complainants have assumed many of the duties of the Quarterly County Court, and that body's right to sue is not questioned.

Defendants' second ground of demurrer has for its basis that the right of certain county employees were affected and were necessary parties, but had not been made defendants to the bill.

To support this ground, defendants rely upon the cases of *Wright v. Nashville Gas and Heating Company,* 183 Tenn. 594, 194 S.W.2d 459 (1946) ; *Coleman v. Henry,* 184 Tenn. 550, 201 S.W.2d 686 (1947).

It is true the nonjoinder of necessary parties is fatal on the question of a justiciable issue, which, in an action for a declaratory judgment, is a necessary condition of judicial relief. This does not mean, however, all persons who might be remotely affected need be joined.

In *Wright v. Nashville Gas and Heating Company,* supra, municipal authorities were necessary parties in a suit by a taxpayer seeking to have the charter and franchise of the Gas Company declared invalid, where the municipality had vested franchise rights in the Gas Company.

In *Coleman v. Henry,* supra, an action for a declaratory judgment by a taxpayer against a campaign manager to determine the validity of a financial statement filed by the manager, the successful candidates were held to be necessary parties because any declaration unfavorable to the manager would affect their status as candidates.

However, in the instant case, the existing controversy is between two governmental bodies. There is

no dispute as to the facts. The question in dispute is as to the duties and responsibilities of each. These two bodies are the necessary parties to a suit for a declaratory judgment, and a failure to join various employees of the county who would only be incidentally affected is not fatal.

Defendants' third ground of the demurrer is the bill requests an adjudication and interpretation of various public and private Acts; and, therefore, the Attorney General and Comptroller of the State are necessary parties; but neither have been joined.

■ T.C.A. Section 23-1107 requires the Attorney General of the State to be joined as a party to a suit for a declaratory judgment "if the statute, ordinance, or franchise is of statewide effect and is alleged to be unconstitutional * * *." This proceeding involves the administration of the local government of Shelby County and the bill does not seek to test the constitutionality of any of the Acts relative to the administration of that local government. Thus, the Attorney General nor the Comptroller were necessary parties. *City of Elizabethton v. Carter County,* 204 Tenn. 452, 321 S.W.2d 822 (1958).

The fourth ground of the demurrer is the bill challenges the action of public officials and should therefore be in the nature of a quo warranto proceeding.

■ This is not a case where defendants are unlawfully holding a public office, and the complainants are attempting to remove them from office, as in the case of *Jones v. Talley,* 190 Tenn. 471, 230 S.W.2d 968 (1950), relied on by defendants in support of this ground of the demurrer.

482

Grounds five and eleven of the demurrer is the bill seeks answers to contingencies which may never arise; and that the issues raised are not right for judicial determination.

However, there is a real and existing controversy between complainants and defendants as alleged in the bill and shown by the stipulation of facts. For example, there is a real and existing controversy whether complainants or defendants are authorized to appoint the County members of the Coliseum Board. The Coliseum is being constructed at a cost of 40% to the County. Under the declaratory judgments Act, it is not necessary that any breach of obligation be first committed, any right invaded, or wrong done to invoke the action of the court under our declaratory judgments Act. *Miller v. Miller,* 149 Tenn. 463, 261 S.W. 965 (1923). The purpose of the declaratory judgments Act "is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and is to be liberally construed and administered." T.C.A. Section 23-1113; *Miller v. Miller,* supra.

The sixth ground of the demurrer is complainants are not entitled to a declaration of their rights and duties because there are "no other rights involved." To support this ground they rely upon the case of *Joyner v. Priest,* supra.

But, as we have hereinabove pointed out, that case merely held that various county and state officials and citizens and taxpayers were not entitled to a declaratory judgment where "no rights are involved upon which a declaratory decree could be made under their bill." The bill sought a declaratory judgment to test the constitu-

tionality of the crime commission Act and in the event the court held the Act constitutional to declare complainants' rights and duties thereunder. No controversy was alleged necessary to invoke the action of the court under the declaratory judgments Act.

■ The seventh ground of the demurrer is the bill "seeks the answers to political questions only and is politically inspired."

It is apparent, however, complainants seek to end the existing controversy as to the administration of county affairs and do not seek an advisory opinion on political matters.

In the case of *Hodges v. Hamblen County*, 152 Tenn. 395, 277 S.W. 901 (1925), relied upon by defendants in support of this ground, the matter in controversy had been settled pending the appeal. The case had, for all practical purposes, become moot, and the appeal was for that reason dismissed.

The eight ground of the demurrer is a declaratory judgment could not settle the controversy sub judice. Defendants submit as authority for this proposition the case of *Nicholson v. Cummings*, 188 Tenn. 201, 217 S.W. 2d 942 (1949).

■ In the Nicholson case it was held the forcing of a Mayor of a municipality to issue a retail liquor license was not a proper matter for a declaratory judgment, and that a declaration in favor of the complainant seeking the license "could have been no more than a stepping stone to further litigation." In the case at bar, a declaration of the duties of complainants and defendants with respect to the administration of the County's affairs would legally terminate the controversy.

 Ground nine of the demurrer is the bill seeks an advisory opinion. But, as we have heretofore pointed out, the bill seeks a determination of the rights of the respective parties to a real and existing controversy involving the administration of county affairs, and not a future or contingent situation.

 Ground ten of the demurrer is there can be no adverse interest between the parties, because both complainants and defendants are public officials charged with the administration of county government. This insistence overlooks the fact that complainants and defendants are competing for the administration of the county's governmental affairs, both the Board of Commissioners and the Quarterly Court are asserting themselves as a dominant body. The citizens of the County are entitled to an orderly administration of their affairs, and the controversy should be ended to accomplish this.

The twelfth ground of the demurrer insists the facts are disputed, and that therefore a declaratory judgment is not available. In support of this contention defendants rely upon *Newsum v. Interstate Realty Company*, 152 Tenn. 302, 278 S.W. 56 (1925).

 In the Newsum case this Court affirmed the dismissal of the bill where the facts were in dispute and the bill did not show the facts upon which the legal relations of the parties rested. This Court held the Chancellor did not abuse his discretion in dismissing the bill, where a declaration could only be made after an investigation of disputed facts. In the present case, the record contains all the legislative Acts and other instruments necessary for a determination of legal relations, as well as a stipulation of facts.

■ Ground thirteen of the demurrer is the bill is multifarious. However, all complainants compose the Board of Commissioners, and all the defendants compose the Quarterly County Court. The issues in the controversy are not independent, but all arise out of the same controversy. Thus, the bill is not demurrable for multifariousness. *Newsum v. Interstate Realty Company,* supra.

■ Ground fourteen is the bill is argumentative and seeks such a wide range of opinions that it cannot be adequately and concisely considered. However, as pointed out, the facts were stipulated. Further, the Chancellor filed an able opinion.

Ground fifteen is the Court should not in its discretion exercise jurisdiction over the subject matter, it being of a political nature, which "should be settled in the polling place."

■ The bill seeks a clarification of existing legislative Acts. We fail to understand the present controversy between the parties could be settled "at the polling place." It is the duty of the courts to construe legislative Acts.

Ground sixteen is the bill does not present a justiciable issue. Grounds seventeen through twenty-one, inclusive, are substantially the same.

■ However, it is our opinion the questions in controversy are real, not theoretical. The parties have a legal and real interest. A declaration of the rights of the parties will terminate the controversy and uncertainty of each party's rights. *Miller v. Miller,* supra.

We conclude the Chancellor was eminently correct in overruling the demurrer and defendants' first assignment of error must be overruled.

Defendants' second assignment of error is that the Chancellor erred in holding that the Board of Commissioners had authority to the exclusion of the Quarterly Court to participate with Memphis in the administration of the Coliseum.

It is conceded by Counsel that the legislature has the power to strip the Quarterly County Court of all its nonconstitutional powers. *Prescott v. Duncan,* 126 Tenn. 106, 148 S.W. 229 (1912); *Troutman v. Crippen,* 186 Tenn. 459, 212 S.W.2d 33 (1937); *Crewse v. Beeler,* 186 Tenn. 475, 212 S.W.2d 39 (1948); *Metropolitan Gov. of Nashville & Davidson County v. Poe,* 215 Tenn. 53, 383 S.W.2d 265 (1964). The only question, therefore, is whether the legislature has in fact stripped the Quarterly Court of its administrative function as regards the Coliseum.

As the Chancellor indicated, Section 5-103 of the Tennessee Code Annotated, which empowers a County Quarterly Court to act for the County, is basic law as regards county government. However, Chapter 237 of the Private Acts of 1911 created the Board of County Commissioners. Chapter 215, Private Acts of 1957, amended the 1911 Act ''and all Acts amendatory thereof'' by striking Sections 2 to 32, inclusive, of the 1911 Act, and substituting Sections 2 to 25, inclusive, of the 1957 Act.

Section 4 of that Act sets forth the following:

''* * * The said Board is the executive and administrative body of the County and as such charged with the administration of its several institutions and of the County's business, except as to such matters as are by other law required to be administered by the County Court and the County Chairmen.''

Section 8 requires that each commissioner be bonded in the amount of $25,000.00. Section 2 requires that each of the commissioners shall be at least thirty years of age, shall not be a member of the Quarterly Court, and shall devote full time to the performance of his duties. Other sections enumerate specific duties of the commissioners separately but provide that policy matters are the ultimate responsibility of the entire commission.

Chapter 215 was ratified, as required by its own provisions by the Shelby County Quarterly Court. This Private Act controls. *Hurt v. Yazoo & M. V. R. Company,* 140 Tenn. 623, 205 S.W. 437 (1918). While such law is local in its application, it is general in its characteristics. *Hurt v. Yazoo & M. V. R. Company,* supra; *Troutman v. Crippen,* supra.

There is no question as to the power of the County to enter into this Coliseum project. T.C.A. Section 5-1019; Chapter 413, Private Acts of 1933.

The language of Section 4 of Chapter 215 is clear. The Board of Commissioners is designated as "the executive and administrative body of the County and as such charged with the administration of its several institutions and of the County's business except as to such matters as are by other law required to be administered by the County Court and the County Chairmen." This Act, then, gives to the Board of Commissioners all authority in the transaction of the County's business, except that required by "other law."

We do not think that the legislature meant by "other law" the general statutes relating to County government across the State. Otherwise, the Act would have been ineffective. By virtue of the passage of the

various Private Acts establishing a Board of Commissioners, the legislature has excepted Shelby County from the effect of T.C.A. Section 5-103. Thus, we feel that what was intended by ''other law'' is (1) the constitution and (2) other Private Acts, relating to Shelby County and not inconsistent with Chapter 215.

Counsel for the defendants cite as its authority for acting for the County in regard to the Coliseum, T.C.A. Sections 5-103, 5-1020, 5-908, and Chapter 413, Private Acts of 1933.

As noted above, T.C.A. Section 5-103, as well as Sections 5-1020 and 5-908, are not applicable as they are statutes relating to all of the counties of the State. Shelby County has been excluded therefrom.

Chapter 413, Private Acts of 1933, does not give the Quarterly Court the power to represent the County in the participation of the Coliseum project. The Act merely empowers Shelby County and municipal corporations therein to contract for the joint operation of governmental or corporate activities. Section 3 of that Act provides:

''That contracts authorized by this Act shall be entered into and executed by and on behalf of Shelby County by either its Quarterly County Court or by its Board of County Commissioners, with reference to any governmental or corporate activities or functions operated, conducted or controlled by either of them, and by and on behalf of municipal corporations and/or other local governmental agencies located in said county by the legislative counsel or other appropriate governing bodies of such municipal corporations and/ or other local governmental agencies.''

Thus, that Act does not attempt to designate the proper body with respect to Shelby County to contract with the cities.

We think Chapter 215, Private Acts of 1957, is controlling and that the duty and responsibility or participation in the Coliseum project falls upon the County Board of Commissioners. We overrule defendants' second assignment of error.

Defendants' third assignment is the Chancellor erred in giving to the Board of Commissioners the administration of the building department and its subsidiaries and collaterally connected bodies to ,the County Commissioners and the right to employ all subordinate employees of those bodies, since he gave the right to create and establish the policy of the building department and to appoint the building commissioner, the electrical inspector, and the plumbing inspector to the Quarterly Court.

Complainants' first assignment of error is the Chancellor was in error in holding the authority was vested in the Quarterly Court to appoint the building commissioner, the electrical inspector, and the plumbing inspector and to fix their duties and compensation.

Chapter 560, Private Acts of 1931, provided for the regulation, inspection, and the appointment of a plumbing inspector by the Board of Commissioners of Shelby County.

By Section 9 of Chapter 613, Private Acts of 1931, the County Assessor of Shelby County was designated the building commissioner ex officio for that part of the county outside of but within the five mile zone of a municipality within the County.

Chapter 625, Private Acts of 1935, authorized the Quarterly Court of Shelby County to zone unincorporated portions of the County, specifically exempting any zoning within the five mile zone as fixed by Chapter 613 of the Private Acts of 1931. Section 7 of the Act provided the Quarterly Court ''may provide for the enforcement of the zoning regulations by means of the withholding of building permits, and, for such purpose, may establish and fill a position of County Building Commissioner and may fix the compensation attached to said position.''

Chapter 613, Private Acts of 1931, was amended by Chapter 707, Private Acts of 1935, and provided, among other things, as follows:

''Amend Section 7 of said Act by adding at the end thereof a paragraph which shall read as follows:

''In the event that any county coming within the provisions of this Act shall, under the provisions of any Act enacted by this General Assembly or by any future General Assembly, having a county planning commission having county wide jurisdiction, all the duties and powers to be exercised and enjoyed by the county planning commission created under Section 7 of Chapter 613 of the Private Acts of 1931, shall be exercised and enjoyed by the county planning commission with county wide jurisdiction created under the provisions of any Act of this General Assembly or of any future General Assembly.

''Amend Section 9 by adding at the end thereof a new paragraph which shall read as follows:

''In the event that the office of county building commissioner is or shall be created in any county within the population classification of this Act, under any

general or special Act of the General Assembly of the State of Tennessee, the incumbent of which shall have county wide jurisdiction, then such county building commissioner shall have and exercise all the powers and duties and enjoy all the rights and privileges given to the ex-officio building commissioner under the provisions of said Section 9.

"The board of commissioners of any county within the population classification of this Act shall also have the right to designate any officer, official or employee of the county, other than the county assessor, to be ex-officio building commissioner under the provisions of Section 9 of this Act."

Chapter 724, Private Acts of 1935 authorized Shelby County to regulate, in all unincorporated areas of the County, the erection of buildings and other structures, the business of electricians and electrical work, water works and water systems, the disposal of sewage and waste and the plumbing business.

Section 2 of the Act empowered the County "to create the offices of Building Commissioner, Electrical Inspector and Plumbing Inspector; to provide for the appointment of such inspectors, and fix their duties and compensation."

Section 4 of the Act provided:

"That the regulations herein provided for may be adopted by the Quarterly County Court of such counties by resolution, and may be adopted at any regular or special meeting of such Quarterly County Courts. In order to carry out the provisions of this Act, such Quarterly County Courts are hereby authorized and empowered to appropriate monies to carry out the

provisions of this Act, and to provide for the compensation of the inspectors and other officers whose duty it shall be to enforce the provisions thereof.''

Chapter 198, Private Acts of 1955, conferred upon the Quarterly Court of Shelby County the following authority:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That the purpose of this Act is to confer authority on the quarterly county court in counties having a population of 480,000 or more by the Federal Census of 1950, or any subsequent Federal Census, if they elect and deem it expedient so to do, to provide a means whereby and because of the density of population they may create, provide and establish rules and regulations governing the construction of all buildings, plumbing, sewerage and electrical wiring placed in or on any building or the premises thereof, outside the corporate limits of any city or town situated therein, and all things incident to and connected with buildings, in the erection and remodeling thereof in said counties, the issuing of licenses therefor, the inspection thereof and the penalty for the violation of any rules and regulations thus made by said quarterly county court.''

That Act further provides:

"Section 6. Be it further enacted, That all laws and parts of laws in conflict with this Act be, and the same hereby are repealed.''

Section 13 of Chapter 215 of the Private Acts of 1957 conferred upon the Board of Commissioners the following authority:

"Section 13. Said Board of Commissioners shall employ the necessary subordinate officers and employees to administer and carry on the work of all the several departments and institutions of the County, including but not limited to the County Health Department, the Shelby County Hospital, the County Jail, except for such functions in connection with the jail as are the duty of the Sheriff, the County Morgue, the Courthouse, the Penal Farm, construction and maintenance of County Roads, and the carrying on of the office of said Commissioners.

"The employment of all such subordinate officers and employees shall be at the will and pleasure of and their compensation and others terms and conditions of employment shall be fixed by the Board of Commissioners."

The Act further provides:

"Be it further enacted, That all laws and parts of laws in conflict herewith be and the same hereby are repealed."

Sections 13-401 through 13-415, inclusive, of Title 13, Chapter 4, T.C.A., codified generally from Chapter 33 of the Public Acts of 1935, authorize the Quarterly County Courts of the State to zone all areas outside of municipalities within the county. Section 13-410 thereof authorizes the several Quarterly Courts to establish and fill the position of county building commissioner and fix his compensation. However, Section 13-415 expressly states no provision of any private Act is repealed or modified relating to county zoning regulations heretofore enacted.

From a review of the foregoing maze of legislation, the Chancellor found:

"It appears that by specific authority of Chapter 625 of the Private Acts of 1935, the Quarterly County Court may establish and fill the position of County Building Commissioner for zoning purposes outside of and beyond the five mile area and fix his compensation for such purposes, as does Section 13-401 T.C.A., if that section is effective in view of Section 13-415 above mentioned.

"As to within the five mile area, the provision with respect to the County Assessor acting as the Building Commissioner in that area, as specified in Chapter 613 of the Private Acts of 1931, appears abrogated by the amendment in Chapter 707 of the Private Acts of 1935, above quoted, providing that a Building Commissioner having county wide jurisdiction (necessarily exempting jurisdiction within incorporated areas), if such a position is created, shall have and exercise all of the powers and duties, etc. of the County Assessor.

"It is stated in the Brief filed by the complainants, supported by Stipulation:

" 'C. Facts. The only additional fact that must be before the court is that the Shelby County Building Department at the present functions in the entire unincorporated area of the county, and it also regularly functions in the incorporated town of Bartlett and, occasionally, as requested by the local officials, functions in the incorporated towns of Arlington and Collierville.'

"In *Reddoch v. Smith* (May 8, 1964), 214 Tenn. 213, 379 S.W.2d 641, and on page 643, our Supreme Court quoted the Trial Court with approval, as follows:

" 'Likewise by Chapter 707 of the Private Acts of 1935, the 1931 Act was amended so as to give the County Building Commissioner, appointed under Chapter 625 of the Private Acts of 1935, the same powers and duties within the Five-Mile area.

" 'From the above, it is clear the Legislature intended that the County Planning Commission and the County Building Commissioner, created by the 1935 Act, should have county-wide jurisdiction, including the Five-Mile area.'

"In view of the creation of the office of County Building Commissioner with county wide jurisdiction (certainly authorized under Chapter 724 of the Private Acts of 1935), it would appear that any authority in the County Commission to appoint an ex officio County Building Commissioner under Chapter 707 of the Private Acts of 1935 necessarily became ineffective.

"It is considered and found that by any reasonable construction of the meanings and intendments of Chapter 724 of the Private Acts of 1935, and construing all of the above mentioned enactments in pari materia, the authority is vested in the Quarterly County Court, acting for Shelby County, to create the offices of Building Commissioner, Electrical Inspector and Plumbing Inspector, to appoint such commissioner and inspectors and to fix their duties and compensations.

"It is further considered that Chapter 560 of the Private Acts of 1931, insofar as that Act authorizes the County Commissioners to appoint a county plumbing

inspector and to fix his compensation has been repealed by necessary implication and that the conclusion above expressed with respect to the Building Commissioner, Electrical Inspector and Plumbing Inspector is confirmed by the enactment of Chapter 198 of the Private Acts of 1955.

"The above conclusion with respect to the appointment of the County Building Commissioner appears also consistent with the authority vested in the Quarterly County Court to act jointly with the City of Memphis in appointing the Building Commissioners or Inspector of the City as Building Commissioner under Chapter 613 of the Private Acts of 1931.

\* \* \* \* \* \*

"Answering further specific queries in the bill filed in respect to the County Building Department, the County Board of Building Appeals, the County Board of Electrical Examiners, and related matters, this Court, based upon the authority and principles previously discussed and the law generally has reached the conclusions immediately below set forth.

"The authority of the County Building Department is County-wide with general jurisdiction, not limited to the enforcement of zoning regulations, as delegated to it by the Quarterly County Court, excluding, however, incorporated areas. By authority of Sections 4 and 13 of Chapter 215 of the Private Acts of 1957, the Shelby County Board of Commissioners is authorized to employ and fix the compensation of all employees of the County Building Department, whether under or above $3,000.00 per annum, excluding, however, the Building Commissioner.

\* \* \* \* \* \*

"The employees of the County Building Department, excluding the County Building Commissioner, may be employed at the 'will and pleasure' of the County Commissioners, and the County Commissioners, by Section 4 of Chapter 215 of the Private Acts of 1957, are charged with the responsibility of requiring a proper discharge of employment duty by all employees of the County Building Department, including the County Building Commissioner."

We agree with the Chancellor's findings with the exception that we think he was in error in holding the Quarterly Court was authorized to appoint the Building Commissioner, the Electrical and Plumbing Inspectors.

By stipulation it is shown in the record the Quarterly Court passed resolutions with respect to the County Building Department on July 20, 1959, July 8, 1963, July 15, 1963, and October 28, 1963. And with respect to the County Electrical Department, the Quarterly Court passed resolutions on March 16, 1962, and July 8, 1963.

There is no doubt the Quarterly Court had the power to pass the resolutions creating the County Building, Electrical and Plumbing Departments. But we think the Quarterly Court was without authority to appoint the Building Commissioner, the Electrical and Plumbing Inspectors.

It is our opinion by the enactment of Chapter 215 of the Private Acts of 1957, the authority of the Quarterly Court to appoint these officers was repealed. As we have seen Section 13 of the Act empowers the Board of Commissioners to employ all "subordinate officers and employees to administer and carry on the work of all the several departments and institutions of

the County. * * *." Furthermore, the Act specifically repeals all laws and parts of laws in conflict therewith.

We think the Building Commissioner, the Electrical and Plumbing Inspectors come within the meaning of the term "subordinate officers and employees." In other words, it is our opinion these positions are not offices within the meaning of Article 11, Section 17 of our Constitution.

We overrule defendants' third and sustain complainants' first assignments of error.

Defendants' fourth assignment is the Chancellor erred in holding the function of the Quarterly Court in reference to the budget of the Board of Commissioners is to see that enough tax money is raised to finance the budget, although the County Court may review the budget; and, in good faith, "eliminate such items as evidence patent duplications or mistake as to expenditures entrusted to the discretion of the County Commissioners and to correct any items which are determined, in good faith, to evidence caprice, arbitrary actions or misapprehension of a factual situation * * *."

Complainants' second assignment attacks this holding insofar as it gives the Quarterly Court authority to change the budget.

Section 23 of Chapter 215, Private Acts of 1957, provides the Board of Commissioners shall prepare a budget, "and shall present the same to the County Court at its April Term so that the County Court may determine the amount of taxes necessary to be assessed." This provision sets forth the procedure to be used, and excludes the idea the Quarterly Court may change or tamper with the budget at its discretion.

Section 5-927, Chapter 9, Title 5 of T.C.A., provides:

"It shall be the duty of the quarterly county courts in regard to all departments, commissions, institutions, boards, offices, or agencies, to adopt a budget and appropriate funds for the ensuing fiscal year. This section shall not be construed as affecting the laws relative to the budget of the county board of education, nor the budget submitted to the quarterly county court by counties having the commission or county council form of government."

In the case of *State ex rel Maynard v. Armstrong,* 200 Tenn. 191, 292 S.W.2d 7 (1956), this Court said:

"Giving of all administrative powers to the Commission necessarily means that the County Court cannot change the budget, for to exercise such an authority could deprive the County Commission of all administrative powers."

The Chancellor, in finding the Quarterly Court could review the budget within the bounds above shown, followed the ruling of this Court in the case of *State ex rel. Bobo v. County of Moore,* 207 Tenn. 622, 341 S.W.2d 746 (1960).

The Bobo case deals with a budget of the County Board of Education and holds the Quarterly County Court of that County could review the budget.

In the Bobo case the Quarterly Court of Moore County was the administrative body of the County under T.C.A. Section 5-103. Section 49-201, Chapter 2, Title 49 of T.C.A., provides: "The duties of the Quarterly Court shall be: * * * (2) To consider, on the recommendation of the County Board of Education, school budgets for

the county elementary and county high schools, and to provide necessary funds to enable said county board to meet all obligations under the adopted budgets."

Thus, it is apparent the Quarterly Court had the authority to consider and control the budget of the Board of Education by the use of reasonable discretion. *Smith v. Groce*, 158 Tenn. 255, 12 S.W.2d 715 (1929); *State ex rel. Brown v. Polk County*, 165 Tenn. 196, 54 S.W.2d 714 (1932).

In the case of *State ex rel. Maynard v. Armstrong*, supra, the court had under consideration a Private Act creating a Board of County Commissioners for Knox County. The Act provided it was the intention of the Act to divest all purely administrative and appointive powers out of the County Court and all other Boards or Commissions, except the schools and vest such powers in the Board of County Commissioners. The Act also provided that the Board of Commissioners should submit a budget for the information of the County Court, and made it mandatory upon the Court to levy a tax that would meet the requirements of the budget in toto.

The only difference in the Knox County and the Shelby County Acts as regards this matter is the Knox County Act makes the levying of a tax sufficient to take care of the budget mandatory. *Troutman v. Crippen*, supra.

In the instant case, as was true in the Maynard case, the Board of Commissioners had been created by a Private Act as an executive and administrative body authorized to act for the County. We think, therefore, as held in the Maynard case, the administrative power of controlling the budget has been withdrawn from the Quarterly Court.

█ But we do not think the authority to eliminate patent duplications and mistakes and obviously arbitrary or capricious items from the budget by the Quarterly Court amounts to changing or controlling the budget.

In confining the review of the budget by the Quarterly Court to the matters above, does not grant to it the power to change or control the budget at its discretion.
█ Should either body, the Board of Commissioners or the Quarterly Court, act arbitrarily with respect to the budget "the courts are the final arbiters of whether discretion has been reasonable or capricious." *State ex rel. Bobo v. County of Moore,* supra.

Accordingly, we overrule defendants' fourth and complainants' second assignments of error.

█ Defendants' fifth assignment of error is that the Chancellor erred in placing a broad interpretation on Chapter 215, Private Acts of 1957, particularly insofar as his interpretation would repeal or modify existing statutes, "to the point that the Act would be unconstitutional by virtue of being broader than its caption."

█ The Chancellor recognized in his opinion that Section 4 of Chapter 215 makes the Board of Commissioners the administrative body of the County, "except as to such matters as are by other law required to be administered by the County Court and the County Chairmen." The Act of 1911, as amended by the 1957 Act, contains the caption that it is an Act to create a Board of County Commissioners and to provide for their election, qualifications, and removal, and to prescribe their duties, etc. The caption itself is in no way restricted, within the meaning of that term, but is general. *Troutman v. Crippen,* supra.

 It is elementary that the legislature may enact legislation "with respect to the instrumentality selected to administer the law," and that special laws may be passed affecting counties. *Troutman v. Crippen,* supra. When tested by constitutional provisions, every doubt is to be resolved in favor of the validity of an Act of the legislature.

For the foregoing reasons, defendants' assignments of error are overruled. Complainants' first assignment is sustained, but the second assignment is overruled. The decree of the Chancellor is modified as indicated, and as modified is affirmed.

BURNETT, CHIEF JUSTICE, and WHITE, DYER and HOLMES, JUSTICES, concur.